EDWARDS *vs.* BISHOP. [61]

Where a testator, before the revised statutes, devised a lot of land to his wife during her widowhood, and on her death to be "equally divided" between his two sons, and there were no words of inheritance in the will, *held* that the sons took a life estate only.

By the common law as well as under the statute, (2 *R. S.* 307,) a tenant in common, in order to maintain ejectment against his co-tenant, must show an actual ouster, or some act amounting to a total denial of his right.

The denial must be such as to amount to a disseisin of the co-tenant, or establish an adverse possession on the part of the wrongdoer.

The defendant, who was a tenant in common with the plaintiff of the title, "admitted himself to be in possession, claiming the premises in question as *owner in fee thereof* under a *quit-claim* deed" from a grantor who had owned an undivided share, and which deed purported to remise, lease, and forever quit-claim unto the defendant, his heirs and assigns forever, the same premises describing them by metes and bounds. *Held*, that the defendant was not guilty of any ouster or denial of his co-tenant's right, so as to subject him to an action of ejectment.

By claiming *title* under such a deed merely, the defendant, it seems, only asserted his right to the share which his grantor held, and not to the whole premises.

EDWARDS brought ejectment against Bishop, in the supreme court, to recover a tract of land in Columbia county, called the "Bartlett lot," and so described in the will of Nathaniel Olmstead, sen. who died in 1821, leaving four children, Nathaniel, jr. Joseph Washburn, Anna and Mary. By the will he gave to his wife, Sylvia, the use and occupancy of the Bartlett lot during her widowhood, but at her decease, to be "equally divided" between his sons Nathaniel Olmstead, jr. and Joseph Washburn Olmstead. The devise had no words of inheritance. On the trial the plaintiff deduced title from the sons and claimed to recover the whole premises, on the ground that by the will they took a fee. The sons died prior to 1840 and the widow in 1845. The defendant claimed under Anna Olmstead, one of the daughters, insisting that the sons took by the will only a life estate, and that on their death, she took an undivided fourth as one of the heirs at law.

If it should be held that the sons took only a life estate under the will, in the Bartlett lot, then the plaintiff claimed to [62]

recover the two undivided fourths, which descended to them as heirs at law. Under that construction of the will, the plaintiff and defendant would be tenants in common, and the defendant insisted that the plaintiff could not recover inasmuch as no ouster had been proved. It was agreed by stipulation that the " defendant admitted himself to be in possession of the premises described in the declaration at the time the suit was brought, and claimed the same as owner *in fee thereof* by virtue of a deed executed to him by Anna Olmstead, dated December 30, 1845, which deed is in the words and figures following :" The deed was set forth at length in the stipulation. It was a *quit-claim,* by which the grantor for the consideration of $200, remised, released, and forever *quit-claimed* unto the defendant the land in question by metes and bounds, " to have and to hold the said *released* premises" unto the defendant, his heirs and assigns forever.

PARKER J. before whom the cause was tried, directed a verdict for the defendant, upon the whole case, subject to the opinion of the supreme court. The plaintiff excepted. The supreme court rendered judgment for the defendant and the plaintiff appealed to this court. For a full statement of the will of Nathaniel Olmstead, sen. see *Harvey* v. *Olmstead, (Com. R. pp.* 484, 485.)

*K. Miller,* for appellant.

*H. Hogeboom,* for respondent.

GARDINER J. The testator, Nathaniel Olmstead, senior, after a previous devise to his wife during her widowhood, directs that " at her death, the above lands and buildings are to be *equally divided* between his sons, Nathaniel Olmstead, jr. and Joseph W. Olmstead. The question is whether the sons took a fee in the lands there referred to, of which the premises in question are a part. If the entire premises had been devised to Nathaniel, without words of limitation, he would have taken an estate for [63] life. We so decided in Harvey v. Olmstead, 1 *Comstock,* 483, in giving a construction to this same will. How his situa-

Edwards *v.* Bishop.

tion, or that of his brother, is improved, and their respective life interests in the property enlarged to a fee, by having the land divided between them, has not been satisfactorily explained, and I am unable to perceive. (5 *Cowen's Rep.* 221.)

Some stress was laid upon the circumstances, that a previous freehold estate was given to the wife of the testator. But limitations of successive life estates, in the same property, was no uncommon occurrence when this will was drawn ; and there is nothing very extravagant in the supposition which the testator probably entertained, that his sons might survive their mother. (*Compton* v. *Compton,* 9 *East,* 267.) In *Doe* v. *Clark,* (5 *Bos. & Pul.* 343,) the testator gave to his son, after the death of his wife, certain houses described, and then charged the whole of his property with the payment of legacies. It was held, that the son took but a life estate, notwithstanding.

This we think, was the estate of the sons of the testator, as devisees in the land in controversy in this suit. The other questions made in relation to the will of Nathaniel Olmstead, have been disposed of in Harvey v. Olmstead, supra, and in Mary Olmstead v. Samuel Olmstead, decided at the present term. (*a.*)

2d. The plaintiff claims that he has succeeded to all the title and interest of N. and J. W. Olmstead : and that they, as heirs at law of Nathaniel, senior, were entitled, each, to an undivided fourth of the lands in suit ; and to that extent, he has a right to recover, at all events. The judge directed a verdict for the defendant. His ruling can be sustained upon the ground only, that the plaintiff and defendants were tenants in common, and that no ouster by the latter, of his co-tenant, was proved upon the trial.

By the provision of the revised statutes, (2 *R. S.* 307, § 27,) the plaintiff was bound to prove that "the defendant actually ousted him, or did some *other act* amounting to a *total denial* of his right as co-tenant." This was the rule of the common [64] law. The denial must be such, when made, as to amount to a disseisin of the co-tenant ; or such as will establish an ad-

(*a*) Ante, p. 56.

verse possession upon the part of the wrongdoer. (*Clapp* v. *Bromagen*, 9 *Cowen*, 556, 563; 7 *Wheaton*, 59.) The defendant, from any thing that appears, entered upon the premises as tenant in common with the plaintiff. Being in possession, " he claimed the same as owner in fee." If the claim had stopped here, it would be difficult to designate any part of the premises of which he was not the owner. Not the exclusive owner, it is true, but still, an owner in fee of every parcel of them. He did not cease to be a proprietor, because others sustained the same relation to the property with himself. All were owners; and owners in fee; the interest of each extending to the whole, and not to any particular part, of the land. The defendant was not sole proprietor, the exclusive owner, nor did he claim to be. On the contrary, he exhibited a deed as the sole evidence of his title, from a child and heir of the testator, by which she released and quit-claimed the premises to the defendant. This, as the terms of the conveyance import, was a yielding up to him, and for his benefit, her *claim* and title to them. (9 *Cowen*, 18; *Coke Litt.* § 446, *p.* 265, *a b.*) Her interest was undivided, and she therefore properly transferred by the deed, her *claim* to the whole property described by metes and bounds. She, in a word, assumed to convey her claim and right, whatever it was, and nothing else. The defendant, by " virtue of the deed from Anna Olmstead," claimed nothing more.

The character of her right must have been fully understood by the plaintiff, who in this suit claimed the whole lot, under a will, in which it appeared that Anna was the daughter and heir at law of the testator, who died seised of the property. The claim of the defendant, therefore, so far from being a total denial of the plaintiff's right as co-tenant, was entirely consistent with it. Here was no demand made of the possession by the plaintiff or of his share of the rents and profits, and no denial of either, by the defendant. There is no proof even of the receipt of the rents and profits by the latter.

Sound policy demands, that where declarations made, not to [65] the plaintiff, but for aught we can say to a mere stranger, are

the only evidence of an ouster, that they should be unequivocal in their character. There would be no safety for tenants in common, if those who were occupants of the land could be made disseisors, or an adverse possession be established, and the statute of limitations commence running against those who were out of possession on the evidence contained in this bill of exceptions. (4 *Peters' Cond. Rep.* 606, 608.) There is no adjudged case that goes so far. In *Doe* v. *Prosser*, (*Cowp.* 217,) it was said, that a refusal to pay rents and profits to a co-tenant, is not sufficient without denying his title: But, if upon demand, by the co-tenant of his share, the other denies to pay and *denies* his title, and continues in possession, such possession is adverse. (*Doe* v. *Hilling*, 11 *East*, 49 ; *Sigler* v. *Van Riper*, 10 *Wend.* 415.; *Ricard* v. *Williams*, 7 *Wheat.* 60.)

*Valentine* v. *Northrop*, (12 *Wend.* 495,) is the strongest case for the plaintiff I have been able to find. The defendant held under a title derived from five of the heirs of one Fish. The defendant claimed the *whole* premises as *his own,* had offered to *sell* them, and being told that all the heirs had not signed his deed, he said they had received their *share* of the *consideration,* and he thought equity would compel them to sign it. This was held to amount to a denial of the right of the plaintiffs, who as heirs of Fish, were entitled to four-ninths of the property.

In this case the defendant, at most, asserted his own title, without denying that of his co-tenant. Neither his declarations nor acts, are inconsistent with the supposition that he acquired and now holds possession of the premises as tenant in common with the plaintiff.

We think the direction of the judge right, and that the judgment of the supreme court should be affirmed.

Judgment affirmed.