## THE TRUSTEES OF THE CHURCH AND SOCIETY OF NORTH GREIG *vs.* JOHNSON.

Where one of several tenants in common of premises entered thereon, claiming to be the exclusive owner, locked the door of the building thereon, and thus excluded the others therefrom, and had ever since kept possession ; *held* that this was an ouster of the co-tenants so excluded which entitled them to recover in ejectment.

APPEAL, by the defendant, from a judgment entered upon a trial at the circuit, before a justice of this court without a jury, a jury having been waived.

The action was brought to recover the possession of an undivided half of certain premises, situate in the town of Greig, Lewis county.

The judge before whom the action was tried, found the following facts:

1. That April 8, 1847, Lyman R. Lyon acquired title to one-half of lot No. 91, Brantingham tract, Greig, Lewis county, New York, of which the premises described in the complaint are part.

2. That March 10, 1854, Francis Seger deeded the undivided one-half of said lot No. 91 to John McConnell.

3. That March 10, 1854, said John McConnell mortgaged back said undivided one-half of said lot No. 91 to secure $865.

4. That May 2, 1859, Lyman R. Lyon deeded to the plaintiffs the undivided one-half of the premises described in the complaint, to be held and occupied so long as they were used for a place of public worship, and the plaintiffs covenanted to fence the premises so conveyed.

5. That May 2, 1859, Francis Seger released to the plaintiffs the undivided one-half of the premises described in the complaint from the said mortgage given him by McConnell.

6. That the McConnell mortgage was foreclosed under the statute, and the premises described therein sold at such foreclosure sale, August 13, 1864, and the defendant Johnson became the purchaser, at which time the plaintiffs had built, and were occupying, a church edifice on the premises described in the complaint.

7. That after the defendant became the purchaser at such mortgage sale, he commenced an action in partition against said Lyman R. Lyon, who suffered a default, and afterwards, to wit, February 12, 1866, judgment was entered in said action, whereby the north half of said lot No. 91 was set off to the defendant, within which is included the premises in question.

Trustees of the Church and Society of North Greig *v.* Johnson.

8. That about April 1, 1866, the defendant entered into the possession of the whole of the premises described in the complaint, claiming to be the exclusive owner of the same, and excluded the plaintiffs therefrom, and has ever since kept possession of the same.

9. That the value of the use of the premises described in the complaint is $70 per annum.

As matters of law the judge found that the plaintiffs were the owners of the undivided one-half of the premises described in the complaint, and entitled to the possession of the same. That the defendant had unlawfully withheld the same from the plaintiffs since April 1, 1866; that the plaintiffs were entitled to the one-half of $70 per year from that time to the entry of judgment for damages for such unlawful withholding.

And judgment was ordered for the plaintiffs for the recovery of the equal undivided one-half of said premises, and such damages as aforesaid, with costs of this action.

*Abram I. Mereness*, for the appellant.

*C. D. Adams*, for the respondents.

*By the Court*, MULLIN, J. This action was brought by the plaintiffs to recover possession of certain premises in the town of Greig, in the county of Lewis, on which they had erected a church edifice, and which they had occupied for a time; but for what length of time does not distinctly appear. The defendant, claiming to own the whole lot on which the church stood, entered and occupied it, and, as the plaintiffs claim, excluded them therefrom. The cause was tried before the court without a jury, and judgment was ordered in favor of the plaintiffs for one undivided half of the premises, and for $35 for the use of such half, and from that judgment the defendant appeals.

The plaintiffs proved on the trial their incorporation in March, 1859. That on the 2d of May, 1859, Lyman R. Lyon and wife conveyed to them the one undivided half of the premises in question, upon condition that they (the plaintiffs) should forever keep the fences on said lot in repair. It was also proved on the part of the plaintiffs that the defendant denied plaintiffs the use of the church; that he claimed the premises to be his, and the door of the church was locked. The witnesses who swore to the denial by the defendant of the use of the church, testified, on cross-examination, that the defendant had not forbidden the use of the church, except that he told him (the witness) that it belonged to him (the defendant,) and the witness saw that the door of the church was locked, but had not seen the defendant lock it. The use of the premises was proved to be worth $70 per year. On the part of the defendant it was proved that he became owner of one undivided half of lot 91 of Greig, of which the premises in question formed part, and that there had been a partition of said lot between him and the plaintiffs' grantor, who owned the other half, and in that division the north half of said lot 91 was set off to the defendant, and that the church lot was upon said north half. The defendant's title was subsequent to the conveyance by Lyon and wife to the plaintiffs. The defendant was sworn as a witness, and testified that he never refused the use of the church to the plaintiffs; that they had free access to it and used it for a sabbath school; that there had been no regular meetings of the society for at least eighteen months; that he told Carter, the witness on the part of the plaintiffs, and one of the trustees of the church, that he considered the lot belonged to him. He had not kept the meeting-house locked.

The court found, among other things, that the plaintiffs were the owners of one undivided half of said

premises. That the defendant entered upon said premises claiming to be the exclusive owner of the same, and excluded the plaintiffs therefrom, and had ever since kept possession.

The ground relied on to reverse the judgment is that no ouster of the plaintiffs was proved. If this point was not established the judgment is erroneous, and must be reversed.

The plaintiffs and the defendant were tenants in common of the premises, and to entitle the former to recover, an ouster must be proved. What is an ouster that will entitle the co-tenant that is ousted to recover in ejectment? Story, J., in *Record* v. *Williams*, (7 *Wheat.* 59,) says: "An ouster may be proved by exclusive possession, accompanied with a notorious claim of exclusive right." Chancellor Jones, delivering the opinion of the Court of Errors in *Clapp* v. *Bromagham*, (9 *Cowen*, 530, 535,) says: "Anciently the rule was that an actual ouster or forcible dispossession of the co-tenant was necessary to constitute a disseisin. That rule was afterwards relaxed, and the exclusive receipt of the profits by one, withholding from his companion all participation in them, or an actual hindrance of the companion from entering or sharing the possession, was adjudged to be a sufficient evidence of an adverse holding." And afterwards it was held in *Doe* v. *Bird*, (11 *East*, 51), that one tenant in common in possession claiming the whole and denying participation to the other, is evidence of an ouster, and that it is not indispensably necessary, to make the possession adverse, that there be a receipt of the rents and an actual hindrance of the co-tenant from entering. In *Valentine* v. *Northrop*, (12 *Wend.* 494,) the plaintiff and defendants were tenants in common. The defendant claimed the whole premises as his own, and had offered to sell them, and on being reminded that all the heirs had not signed

the deed through which his title was derived, said he presumed they would sign it, as the consideration had been paid, and they had received their share, and equity would compel them to sign it. It was insisted that there was not an actual ouster. But the court held, on a motion by the defendant for a new trial, that an ouster was proved. "The assertion," says Savage, Ch. J., "by the defendant of his ownership of the whole premises, and his offer to sell, coupled with his declaration that the plaintiff would be compelled to sign the deed through which he derived his title, amounted to a sufficient denial of the plaintiff's rights as co-tenant, to entitle them to a verdict." See also, *Edwards* v. *Bishop*, (4 *N. Y.*, 61.)

In the case before us the defendant admits that he claimed the exclusive title to the premises, and I found upon the evidence that he locked the door and thus excluded the plaintiffs. This, I thought, and still think, was an ouster of the plaintiffs which entitled them to recover. The case is made up in a way to secure a reversal of the judgment by excluding from it evidence which tended to establish an exclusion of the plaintiffs. The witness testified, as appears by my minutes, that "in April the plaintiffs were denied the use of the church by the defendant. He says, we asked him if he claimed to own the property, and he said he did." "There was a padlock on the door outside. The trustees did not put it on; at another time the defendant claimed it as his own. We asked for the key; the defendant said he would not tell us where it was. The defendant has farmed and cultivated the lot this seson." It was upon this evidence on the part of the plaintiffs that I found the ouster. The evidence in the case is not perhaps as strong as this; yet it is sufficient to establish an ouster, within the principle of the cases cited and others more recently decided.

Although this case is most imperfectly made up, yet it contains evidence sufficient to sustain the judgment, and it must therefore be affirmed.

[ONONDAGA GENERAL TERM, October 1, 1867. *Morgan, Bacon, Foster* and *Mullin,* Justices.]