HENRY C. VALENTINE, Respondent, v. WARREN M. HEALEY and JOHN H. ZABRISKIE, Appellants.

1. TENANTS IN COMMON — LEASE OF COMMON PROPERTY TO A FIRM OF WHICH ONE OF THE TENANTS IN COMMON IS A MEMBER — HOLDING OVER. *It seems*, that the fact that a lease for a year, of premises owned in common, runs to a firm of which one of the tenants in common is a member does not compel the inference in favor of his co-tenant that a continuance in possession after the expiration of the lease is a holding over for another year under the lease, and does not preclude a showing, in avoidance of such an inference, that the lessee tenant in common assumed his relation of owner on the expiration of the lease and permitted his firm to continue in possession temporarily, at a *pro rata* rent.

2. ADOPTION BY TENANT IN COMMON OF LEASE EXECUTED BY CO-TENANT TO LATTER'S FIRM — RECOGNITION OF AUTHORITY TO DEAL WITH COMMON PROPERTY. Where one of two tenants in common has acquiesced in a lease for a year executed by his co-tenant alone to a firm of which the latter is a member, and has brought suit against the lessees as holding over for another year under the lease, he is deemed to have adopted the lease as his own and to have recognized the authority of his co-tenant to make it and to treat with his firm in reference to the premises; and if the latter, on the termination of the lease, has given his firm permission to remain in possession temporarily, at a *pro rata* rent, the members of the firm are entitled to show that fact, in defense of the action seeking to hold them liable as holding over under the lease.

*Valentine* v. *Healey*, 1 App. Div. 502, reversed.

(Argued December 1, 1898; decided January 10, 1899; motion for reargument submitted February 27, 1899; denied March 7, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 19, 1896, affirming a judgment in favor of plaintiff, entered upon a verdict directed by the court for the sum of $1,901.07.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Elihu Root* and *Robert Thorne* for appellants. A tenant in common has a legal right at all times to enter upon and occupy and possess each and every part of the common prop-

47

erty, and the exercise by him of that legal right imposes upon him no obligation to pay for use and occupation, even though he occupy the whole, much less can it raise against him by the operation of a naked presumption of law a liability to pay rent. (*Henderson* v. *Eason*, 9 Eng. L. & Eq. 337; *Woolever* v. *Knapp*, 18 Barb. 265; *Wilcox* v. *Wilcox*, 48 Barb. 327; *Dresser* v. *Dresser*, 40 Barb. 300; *Rich* v. *Rich*, 50 Hun, 199; *Le Barren* v. *Babcock*, 46 Hun, 598; 122 N. Y. 157; Freeman on Co-tenancy [2d ed.], § 248.) Upon the expiration of the lease, Healey, by virtue of his legal right as a. co-owner in fee of the land, could continue to use and occupy his property without incurring any liability or penalty by so doing. (*Mumford* v. *Brown*, 1 Wend. 53; *McKay* v. *Mumford*, 10 Wend. 351; *Dresser* v. *Dresser*, 40 Barb. 301; *Le Barren* v. *Babcock*, 122 N. Y. 157.) The presence of the defendant Zabriskie does not alter in any sense or degree the legal aspect of the case. The occupation was by Healey, the co-owner. (Freeman on Co-tenancy [2d ed.], § 253; *McGaverill* v. *Murphy*, 1 Hilt. 132; *Badger* v. *Holmes*, 6 Gray, 118; *Austin* v. *Ahearne*, 61 N. Y. 6.) The letters of Healey & Co. to Warren M. Healey, and Warren M. Healey to Healey & Co., contain and constitute an express license and permission from Mr. Healey as landlord to Healey & Co. as tenants for the occupation of the whole of the premises subsequent to May 1, 1892; and Healey & Co. having occupied under that license, they cannot be regarded as holdovers under the lease, and no liability can attach to them by reason of such occupancy other than that expressly provided for by the terms of the agreement. (McAdam on Landl. & Ten. [2d ed.] § 21; *Pickett* v. *Bartlett*, 107 N. Y. 277; *Schuyler* v. *Smith*, 51 N. Y. 309; *Austin* v. *Ahearne*, 61 N. Y. 6.) The court erred in declining to permit the amendment of the pleadings to conform to the proof upon the motion of defendants' counsel. (*Smith* v. *Rathbun*, 13 Hun, 47; Code Civ. Pro. § 723; *Charlton* v. *Scoville*, 68 Hun, 348; *Maders* v. *Whallen*, 74 Hun, 373; *N. Y. N. P. Co.* v. *N. S. Co.*, 72 Hun, 158.)

*William Allen Butler* and *Adrian H. Joline* for respondent. The holding over by Healey & Co., after the expiration of the term of the lease, created a liability to pay rent for another year. (*Haynes* v. *Aldrich*, 133 N. Y. 287.) The liability thus created by the holding over of Healey & Co., after the expiration of the term of the lease, was not affected by the fact that Warren M. Healey was a member of the limited partnership of Healey & Co., the lessees. (*Curtis* v. *Hollingshead*, 2 Green, 403; *Robertson* v. *Corsett*, 39 Mich. 777; *Cross* v. *Baldwin*, 17 Kans. 336; Parsons on Part. [4th ed.] §§ 1, 3, 4, 46.) A tenant in common may maintain an action for use and occupation against a co-tenant where the obligation to pay rent was created by a lease. (*Leigh* v. *Dickeson*, L. R. [12 Q. B. Div.] 194.) The plaintiff was entitled to a verdict at the second trial, under the ruling and decision of the court at General Term, ordering a new trial. (*Valentine* v. *Healey*, 86 Hun, 259.) The permission given to Healey & Co. would operate only as to Healey's share, and could have no further effect to prevent the creation by law of a new tenancy for a year as to plaintiff's share. (*Murray* v. *Haverty*, 70 Ill. 318.) There was no error in denying defendants' motion to amend the answer by striking out the admission of entry under the lease. (*Richtmeyer* v. *Remsen*, 38 N. Y. 206; *Rosenwald* v. *Hammerstein*, 12 Daly, 377; *Riggs* v. *Chapin*, 27 N. Y. S. R. 268, 270; *Nicoll* v. *Heyman*, 57 N. Y. S. R. 542; *Miner* v. *Baron*, 39 N. Y. S. R. 893.)

HAIGHT, J.   This action was brought to recover a quarter's rent of premises, numbers 311 to 319 West Forty-third street in the city of New York, alleged to be due and owing from the defendants to the plaintiff.

It appears that the plaintiff and defendant Warren M. Healey are the tenants in common and owners of the premises, the plaintiff owning an undivided three-fourths and the defendant Healey an undivided one-fourth. The defendants were general partners and one William Williams was a special partner, constituting the firm of Healey & Co. On the 30th

day of May, 1891, the defendants leased the premises from the plaintiff and Healey for the term of one year from the first day of May, 1891, at the yearly rent of $8,500, payable quarterly, with the privilege to the defendants of continuing the lease for two years more upon giving notice in writing to each of the owners on or before the first day of February, 1892, and not otherwise. The lease was in writing and was signed by the defendant Healey and Healey & Co., but was not signed by the plaintiff. The notice to renew the lease was not given, and the defendants continued to occupy the premises for a few weeks after the expiration of the year.

This action is prosecuted upon the theory that the holding over by Healey & Co., after the expiration of the term of the lease, created a liability to pay the rent for another year, under the rule that where tenants hold over after the expiration of the term the law will imply an agreement to hold for a year upon the terms of the prior lease, if the landlord elects to so regard it. (*Haynes* v. *Aldrich*, 133 N. Y. 287, 289.)

The defendants, in their answer, admitted that after the first day of May, 1892, they continued and remained in the occupation and possession of the premises, but they denied that they thereby elected to continue their tenancy for another year and allege that prior to the first day of May, 1892, they notified in writing Valentine and Healey, the owners, that they elected to discontinue their tenancy on the expiration of the term and declined to renew the lease and that they remained in the occupation of the premises under a new and an express agreement entered into with Warren M. Healey, one of the owners. Upon the trial, the defendants offered in evidence two letters bearing date April 29, 1892, the day before the lease terminated, which are as follows:

" WARREN M. HEALEY, Esq., 1478 Broadway :

" DEAR SIR.—We desire to inform you that, as indicated by our failure to exercise the option expressed in your lease to us for the past year and as verbally stated to you yesterday by our representative, Mr. Thorne, that we shall not renew said lease. We understand that the premises have not been

rented for the coming year and shall be pleased to continue to occupy the same for a few weeks from the first of May next in order to suit our convenience in moving, paying *pro rata* rent for such use and occupation.

                    " Very truly yours,
                        "(Signed)    HEALEY & CO."

                    " NEW YORK, 29 *April*, 1892.
" Messrs. HEALEY & Co., 1478 Broadway :

    " GENTLEMEN.—Your letter of even date to hand.    You are at liberty to continue to occupy the premises Numbers 313 to 319 West 43d street at a *pro rata* rent for the period of such occupancy.    This privilege is accorded you only with the understanding and agreement that such occupancy is to be terminated on a week's notice from either party in order that we may take advantage of any opportunity that may offer to rent the premises for another year.

                    " Very truly,
                " (Signed)    WARREN M. HEALEY."

    Healey testified that the first of these letters was received by him from Healey & Co., and identifies the second letter as written by himself and delivered to Healey & Co.    The letters were excluded by the trial court and an exception was taken by the defendants.    After the plaintiff rested the defendants moved for a dismissal of the complaint upon the ground that the defendant Healey, being an owner in fee of one-fourth of the premises, had a legal right at any and all times to occupy each and every part of the common property, and that his exercise of that legal right, in the absence of any evidence tending to show infringement of the rights of his co-tenants or a legal ouster, could not raise against him by a presumption of law any liability.    This motion was denied and an exception was taken.    Upon the conclusion of the evidence the court directed the jury to render a verdict in favor of the plaintiff for the amount claimed by him.    To this direction an exception was also taken by the defendants.

    In the case of *McKay* v. *Mumford* (10 Wend. 351)

NELSON, J., in delivering the opinion of the court, says : " As to a tenant who has no title, except by the lease under which he enters, if he continues after its expiration, his possession in contemplation of law, is in subordination to the landlord's rights, because the law will not presume him disloyal. But no such presumption exists against the tenant in common. The fact of his not leaving possession does not authorize the inference that he still intends to hold under the lease ; on the contrary, the presumption is that he holds under his own title, which gives him a right to the possession and enjoyment of the whole estate, liable, however, to account to his co-tenant at law." This rule was recognized by the General Term in this case. (86 Hun, 259.) But that court distinguished that case from this. Healey is not the sole lessee. The lease ran to a firm of which he was a member. In this respect the cases are distinguishable, but we fail to see why Healey, at the termination of the lease, may not assume his authority over the premises as an owner and a tenant in common. As such tenant in common he had the right to take and occupy the whole of the premises and preserve them from waste or injury so long as he did not interfere with the right of his co-tenant to also occupy the premises. Had the letter of Healey & Company of April 29, 1892, been received in evidence, it would have shown conclusively that the company did not intend to hold over and renew the lease, but that they sought permission to remain in the premises for a short time to suit their convenience in moving ; and if the letter of Healey of the same date had been received in evidence it would have shown that he not only gave his consent to the company to hold over, but that he assumed his relation to the premises as owner. It would also have explained the admission in the answer that the firm continued in possession after the expiration of the lease and established the facts that justified such action on the part of the tenants.

There is another view of the case which we think may properly be adopted. It may be, and doubtless is the law that a tenant in common cannot bind a co-tenant without his

consent by a contract or a lease with reference to the property of which they are the owners; but in this case, as we have seen, the lease was executed by Healey and was not executed by the plaintiff, but for a whole year the plaintiff accepted the rent and acquiesced in the lease made, and by the bringing of this action has adopted it as his lease, basing his right to recover of the defendants upon it, on the ground that they are presumed to have taken the premises for another year upon the same terms and conditions expressed in the lease. It appears to us that the plaintiff by thus adopting the lease has recognized the authority of Healey to make it in his behalf. It ran for one year with the privilege of two years at the option of the defendants, and, under the circumstances, the other members of the firm had the right to assume that Healey had the authority to treat with them with reference to the leasehold premises. Under this view the letters excluded were proper evidence in the case. Had they been received they would have shown that the retention of the premises by the defendants was under a permit given by one of the owners, whose authority to act for the other owner they had the right to assume by reason of his adoption of the lease under which they had previously occupied the premises.

The judgment should be reversed and a new trial granted, with costs to abide the event.

O'BRIEN, J. (dissenting). The question in this case is whether a partnership firm which goes into possession of real property under a lease from the owners is exempt from the general rules of law governing the relations of landlord and tenant, by reason of the circumstance that one member of the firm happens to be the owner of a small undivided share of the property as a tenant in common. It is not a case of one tenant in common leasing to another, but a case where all the co-owners unite in a demise of the whole property to a distinct legal entity known in law as a limited partnership, of which one of the owners is also a member. The courts below have held that in such a case the obligations of the lease and the

rules of law applicable to the relations of landlord and tenant are not changed, or in any way affected by the circumstance that the owner of the small share in the realty demised is, at the same time, a member of the legal entity or artificial person to which the demise is made. This decision, in my opinion, was clearly right, and no one would ever question it but for the introduction into the discussion of principles that have nothing whatever to do with the law of landlord and tenant, since they apply only to the relations of common owners of estates.

This is a case between landlord and tenant, and not between tenants in common, and it is only when we confuse the one with the other, or attempt to apply to the former relation rules of law applicable solely to the latter, that there can be any doubt about the case. The facts are all admitted on the record, and they are so clear and simple that it is impossible to be misled by any suggestion outside of the controversy.

The plaintiff is the owner of an undivided three-fourths of certain real estate in the city of New York, and the defendant Healey is the owner of the other fourth. The plaintiff and the defendant Healey, as such owners, united in a written lease to the defendants composing the firm of Healey & Co., for one year from the first of May, 1891, at a yearly rental of $8,500 payable quarterly as follows: To the plaintiff, as owner of three-fourths, the sum of $1,593.75, and to the defendant Healey, as the owner of the remaining fourth, $531.25, on the first day of each quarter. The firm of which the defendant Healey was a member entered into possession of the premises pursuant to this lease, and remained therein until after the first of May, 1892, thereby electing, as the plaintiff claims, to continue their tenancy for another year. The defendant failed to pay to the plaintiff the installment of rent which became due, as claimed, on the first of August, 1892, and this action was brought by the plaintiff to recover that sum. These facts are all alleged in the complaint, and the answer admits the execution of the lease, its terms, and the fact that the defendants continued in possession after the expiration of the term.

But they denied that they thereby elected to continue the tenancy for another year, which, of course, was nothing more than the denial of a legal conclusion arising upon conceded facts.

The only defense to the action is that Healey, the co-owner with the plaintiff, permitted his firm to remain in possession after the expiration of the year, and it is claimed that he not only had the right to do that, but to continue in possession by virtue of his right as a tenant in common, although it is conceded that he and his firm went into possession only by virtue of the terms and conditions of the lease.

It was one of the conditions and covenants of the lease that the parties of the second part, that is the defendants, would quit and surrender the demised premises at the expiration of the term. The contention on the part of the defendants virtually asserts that, although they went into possession under this lease, they were entitled in virtue of Healey's co-ownership to violate this covenant, and thus remain in possession for an indefinite period against the will of the plaintiff, who owned three-fourths of the property. There can be no doubt that where lands are held by different parties in common as tenants in common, that unity of possession and right of possession is a distinguishing feature of those relations. The possession of one tenant in common is the possession of the others. One tenant in common cannot bring an action of trespass against another for entry upon and enjoyment of the common property. The growing crop put in by one tenant in common, who took possession exclusively without contract, goes in severalty as the property of each, on partition made while the crop is growing. The rules of the common law governing the rights of tenants in common are quite well understood. But they have no application to this case. The unity of possession and right of possession which attaches to an estate held in common may, of course, be severed or suspended by agreement of the parties. A deed in fee by one tenant in common to another severs this unity forever. So, too, a lease, which is nothing more than a conveyance of an estate for years, severs or suspends the unity of possession and

48

right of possession, and all relations as co-owners, at least for the time being, and when such a lease is made the parties bear to each other all the relations and are subject to all the obligations and entitled to all the rights of landlord and tenant.

The lease was made in this case. The two owners in common were the landlords. The tenant was the legal entity or partnership, of which the defendant Healey was a member, and the circumstance that he was such a member did not change the effect of the lease in the slightest particular. (Freeman on Co-tenancy, secs. 86–88, 89–198, 164–268, 29–33; 4 Kent. Com. 370; *O'Hear* v. *De Goesbriand*, 33 Vt. 594.)

All this is very clear, if we consider the relations of the co-owners to each other and to the property before and after the execution of the lease. Before the lease was executed, either or both were entitled to possession, and neither could lawfully exclude the other. But this situation was completely changed after the lease. Then the plaintiff, although he was the owner of an undivided three-fourths of the property, could not enter upon it, or enjoy it without becoming a trespasser. His rights were, then, governed solely by the lease. He could demand rent. He could institute summary proceedings under the statute regulating the rights and duties of landlord and tenant. In a word, during the existence of the lease, his peculiar rights as a tenant in common were suspended, and the unity of possession and right of possession had been severed, and for the time being abrogated by his own agreement. This was equally true of the defendant and his firm. Although he owned but an undivided one-fourth of the property, yet he or his firm were entitled to the exclusive possession as against his co-owner. He could maintain an action of trespass, not only against the other owner, but any stranger, which, of course, he could not do in virtue merely of his co-ownership. In a word, his rights and powers over the property as a tenant in common were suspended during the existence of the lease, and his firm was then in possession as tenant, entitled to all the rights as a tenant, and subject to all the obligations and

incidents of that relation.  His relations to the plaintiff as a
lessee continued until the lease was terminated, and it could
not be terminated in any other way, so far as the defendant is
concerned, except by fulfilling the covenant of the lease,
which was to surrender up possession at the expiration of the
term.   This the firm refused to do, and by so refusing, it is
said that they have thrown off all their obligations as a lessee
under a written lease, and without the plaintiff's consent have
assumed the rights of a tenant in common; that is, the right
to remain in possession notwithstanding the lease, so long as
the tenancy in common continues.

No one can question the rule of law that where a tenant
holds over after the expiration of the term that the law will
imply an agreement to hold for another year, and that the
landlord is entitled to demand rent accordingly.  (*Haynes
v. Aldrich,* 133 N. Y. 287.)   The defendants in this case
continued in possession after the year expired, and unless they
had in law the right to remain in possession, in defiance of
their covenant to surrender, then there is no defense to the
action.   They assumed by the lease all the obligations of ten-
ants to the landlord, and one of these obligations was to pay
the rent stipulated for another year in case they remained in
possession after the term expired.   I am not able to under-
stand how this obligation is changed by the circumstance that
Healey, one of the co-owners, was a member of the firm that
took the lease.   His right of possession as co-owner was sus-
pended by the lease, and could not revive until all of its
covenants were fully performed by the surrender.   Healey
was not the landlord nor the tenant.   The owners, as a unit,
were the landlords, and the firm, as such, was the tenant.
It might just as well be urged that if this lease, instead of run-
ning to the firm of which Healey was a member, ran to a cor-
poration in which he was a shareholder, that that circumstance
would change the legal effect of holding over by the corpora-
tion.   It is plain that Healey could not, by act or word, change
the obligations of the lease as against the plaintiff.   It is just
as plain that he could not, by act or word, change the legal

effect of holding over by his firm, or change the legal charac-
ter of the act of the firm in continuing the possession after
the term expired. The law declares that this act is an election
on the part of the tenant to attorn to the landlord for another
year, and entitles the landlord to so regard it. Healey had
no more power to change the legal effect of the act than any
other member of the firm. He could not be a lessee one day
and a tenant in common the next, as his interest might
require. The firm being bound by the lease, he was also, and
not until after all of its covenants and conditions had been
performed by surrender of the possession could he resume his
relations to the property as a tenant in common.

This anticipates the principal defense to the action, which,
as disclosed by the record, was a very transparent device that
ought not to mislead any court. It appears that on the 29th
of April, 1892, just as the year was about to expire, Healey,
in his individual name, addressed a letter to his firm in which
he consented that the firm might remain in possession after
the year expired. Thus the writer, though bound by the cov-
enants of the lease, to surrender the possession at the end of
the year, has, by writing a letter virtually to himself, suc-
ceeded, as is claimed, in abrogating the lease and abolishing
the relation of landlord and tenant. The letter, when offered
in evidence, was excluded by the court under the plaintiff's
objection, and to this ruling there was an exception which it
is said is ground for reversing the judgment. All that the
letter proved was Healey's permission to his firm to remain in
possession, and, unless that permission changed the legal char-
acter and effect of holding over, or continuing in possession,
it was utterly immaterial. If he could change the obligations
of the lease and the law of landlord and tenant in this respect
he could, of course, in every other respect. He could, when
possession had been obtained under the lease, write a letter to
himself, or to his firm, permitting them to occupy the prop-
erty at a reduced rental, or without any rent at all. The
moment that we concede the principle that Healey could do
something to change the relations of the parties after the

possession under the lease which his partners could not do, the most absurd consequences must follow. The only just and consistent rule in such cases must be that when a tenant in common unites in a lease as the parties here did, their rights and obligations are governed by that lease while it is in force, and the lease is continued or abrogated in such cases in the same way and by the same acts that leases are continued and abrogated in all cases.

The presence of one of the joint owners in the firm to which the demise was made cannot take this case out of the general law of landlord and tenant. The plaintiff by the lease surrendered to the firm to which the demise was made as a firm and not to any individual member thereof his right to the possession as a tenant in common, so long as that lease remained in force. Thus, while he lost the right to the possession he acquired the right to demand the stipulated rent. The right of his co-owner was affected by the lease in precisely the same way. His individual right to the possession as a tenant in common was suspended for the demised term, and his firm as such acquired the right to the exclusive possession. The duration of the lease was fixed by its terms and by the law, and one of the parties could not change it without the consent of all. The legal effect of that instrument was to vest in the firm as such the exclusive possession and enjoyment of the premises for one year, in case they were surrendered at the end of that time; but if they were not, and the firm still retained the possession, then for an additional year, at the option of the plaintiff. It was a legal right which the plaintiff acquired by the contract to treat the defendants as tenants for another year when they continued the possession, and Healey could not change or destroy that right any more than the plaintiff could change or nullify any right which the firm acquired by the demise. Healey could no doubt waive his right to his share of the rent, or give it to his firm if he chose to do so, but he could not relieve the firm from their obligations to pay to the plaintiff his share, either before the year expired, or after, if they remained in possession and he elected to treat them as tenants.

The firm, being a tenant under the lease, could not, through Healey, one of the members, change the terms or obligations of that contract any more than it could if Healey was not a member, or any more than the plaintiff could to the prejudice of the tenant.   The letter of Healey to his firm, or to himself, attempted to do all this.   It was an attempt on his part to extend the right of the tenant under the lease to remain in possession without incurring the legal consequences which the law attaches to that act.   He had no more power or right to do that than the plaintiff would have to resume possession as tenant in common after receiving a quarter's rent on the second year; and if the owner of three-fourths of the common estate could not change the legal rights of the parties under the lease, it is difficult to see how the owner of one-fourth could. What Healey said to his firm and to himself was virtually this : " We will remain in possession after the year notwithstanding our covenant to surrender; and by virtue of my relations to the property as tenant in common, I absolve you and myself from all the legal consequences of the act; and although we have obtained the exclusive possession under a lease, we can now continue to hold it indefinitely without regard to the lease or its obligations, but as tenants in common."   The learned trial court very properly held that proof of such a transparent device to nullify a solemn contract was not admissible.

The only ground of defense presented at the trial was that Healey had at all times, as tenant in common, the right of possession, and that he could under that right keep his firm in possession indefinitely.   Both sides moved for the direction of a verdict, and neither party asked to have any question presented to the jury.   The court directed a verdict for the plaintiff, thus determining all questions of fact, if any, as well as the questions of law, against the defendants.   They are now precluded from raising any questions in this court, except such as arise from undisputed or admitted facts.   They must stand or fall upon the proposition urged at the trial which, in effect, was, that although the unity of possession and right of

possession was severed by the lease and suspended for the whole period of its duration, yet Healey retained the right to extend the term of the demise at his own will and without the consent of the plaintiff, and could absolve his firm, which was the tenant, from all the legal consequences of holding over.

If that proposition is law, then this action was well defended. In my opinion such a proposition is utterly indefensible, and hence I conclude that the plaintiff was entitled to recover, and that the judgment below is right. We have no right in this court to draw inferences of fact from the evidence for the purpose of reversing a judgment, though we may in order to sustain it. Nor have we any right to assume that this is a hard case, where the harshness of the law should be tempered by the spirit of equity. There is nothing in the record before us to show that this is a hard case, if that were of any consequence. So far as we know, or can know from the record, the defendants remained in possession of the premises during the whole quarter for which the plaintiff recovered rent, and, if that be so, the judgment compelled them to pay only the agreed rent for the premises which they have possessed and enjoyed. If they have moved out and the plaintiff has resumed possession, or relet the premises, their obligation to pay rent has ceased, since the plaintiff could not recover double rent. If they have moved out and left the premises vacant and unrented, it is their own fault, since, if Healey could, while they were in possession under the lease, extend the right of possession, he certainly could, after moving out, sublet or relet the premises. In any aspect in which the case is viewed, no reason can be found for disturbing the judgment, and it should, therefore, be affirmed.

It may be proper before closing to notice the grounds upon which the prevailing opinion rests. It is based upon two inferences — one of fact and the other of law: (1) That since the plaintiff's signature does not appear from the printed copy of the lease contained in the record to be attached, and that of both Healey and his firm do so appear, then it may be that Healey executed the lease for the plaintiff as his agent;

and (2), being agent for the plaintiff to make the lease, he had authority also as agent for the plaintiff to bind him by giving his firm permission to remain in possession after the year expired.

The inference of agency or actual authority from the plaintiff is based solely upon the absence of his signature from the copy of the lease as printed in the record, which may be due to a blunder of the printer or scrivener. This inference of fact is made not only against the findings of the trial court, that no such authority in fact or in law was possessed by Healey, but against the admission of the pleadings that both of the common owners united in making the lease, and that, too, not for the purpose of sustaining the judgment, but of reversing it. If the lease had not been printed in the record at all, the plaintiff's case would stand admitted upon the record, as it does now. It is hardly necessary to add that a fact admitted by the pleadings cannot be contradicted or qualified by equivocal inferences from the proofs in any case, and much less is it permissible in this court for the purpose of reversing a judgment based not only upon the admission, but upon the findings of the trial court which negative the existence of such fact. The proposition of law that an agent, to execute a lease for a definite term, has power to bind his principal by a renewal or extension of the time, will, I venture to say, be found equally difficult to maintain.

It may finally be observed that the circumstance that the plaintiff's signature does not appear upon the copy of the lease in the record has not the slightest significance, and is not even referred to in the defendants' brief, and was not mentioned at the argument. We might as well, upon the same reasoning, reverse a judgment upon a promissory note appearing in the record without signature when the execution and delivery were admitted by the pleadings.

HAIGHT, J., reads for reversal and new trial; GRAY, BARTLETT, MARTIN and VANN, JJ., concur. O'BRIEN, J., reads for affirmance, and PARKER, Ch. J., concurs.

Judgment reversed, etc.