(96 Misc. Rep. 600)

### BURCHELL v. BURCHELL et al.

(Supreme Court, Special Term, Kings County. September 6, 1916.)

**1. PARTITION ⟨Key⟩89—RIGHTS OF PARTIES—RENTAL VALUE—EVIDENCE.**

Where party to partition suit was to be charged with the rental value of a portion of the premises, the lease of such premises formerly taken by him would be prima facie proof of their rental value.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 246, 251; Dec. Dig. ⟨Key⟩89.]

**2. PARTITION ⟨Key⟩86—USE OF PREMISES—RENTAL VALUE—INTEREST.**

Interest would be properly chargeable on such rental value.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 247–249, 252; Dec. Dig. ⟨Key⟩86.]

**3. REFERENCE ⟨Key⟩107—QUESTION OF FACT—REFEREE'S FINDING.**

The court would not reverse his finding, as against the weight of evidence, where there was a real and substantial contradiction in the evidence.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 207–210; Dec. Dig. ⟨Key⟩107.]

**4. TENANCY IN COMMON ⟨Key⟩28(1)—POSSESSION—LIABILITY FOR RENT.**

The fact that a tenant in common was in possession of the whole or a part of the premises was no basis for compelling him to pay for their use and occupation, and he could not be held liable therefor unless he had agreed to pay rent or had ousted his cotenants.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 76, 83; Dec. Dig. ⟨Key⟩28(1).]

**5. TENANCY IN COMMON ⟨Key⟩28(7)—HOLDING OVER—LIABILITY FOR RENT.**

That a tenant in common had been the tenant of the premises under lease from his cotenants and had held over after the expiration of his lease did not make him liable for the rental value of the premises; the presumption in such case being that he held over as one of the owners and not as a tenant.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 82, 88; Dec. Dig. ⟨Key⟩28(7).]

**6. TENANCY IN COMMON ⟨Key⟩21—RIGHTS OF COTENANTS—POSSESSION.**

A tenant in common could not hold two of a number of booths on the premises for his exclusive use, and prohibit his cotenants from occupying those with him, even though they were permitted to occupy all the others, as each cotenant has the right to share in the possession of each of the pieces of property owned in common.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 62; Dec. Dig. ⟨Key⟩21.]

**7. PARTITION ⟨Key⟩69—OUSTER OF COTENANT—SUFFICIENCY OF EVIDENCE.**

In partition, where liability of defendant for use and occupation was

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

referred, evidence *held* not to sustain the referee's finding that such defendant ousted his cotenants from sharing his possession.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 192; Dec. Dig. ⊕69.]

8. TENANCY IN COMMON ⊕38(8)—OUSTER FROM PART—PRESUMPTION.
Where a tenant in common ousts his cotenants from a part of the premises, there is no presumption of an ouster from the whole premises.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 114; Dec. Dig. ⊕38(8).]

9. TENANCY IN COMMON ⊕21—RIGHTS OF TENANTS—OUSTER.
A tenant in common has no right to oust his cotenants by force or otherwise.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 62; Dec. Dig. ⊕21.]

10. TENANCY IN COMMON ⊕21—POSSESSION—OUSTER.
A tenant in common, who did not deny his cotenants' rights, nor deny them a share in the possession of the premises, did not oust them.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 62; Dec. Dig. ⊕21.]

11. TENANCY IN COMMON ⊕21—POSSESSION—OUSTER—RESISTANCE.
A tenant in common of a number of booths was justified in resisting the attempt of his cotenants, not to obtain a share in the possession of the two booths occupied by him, but to obtain the whole possession and exclude him from occupancy.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 62; Dec. Dig. ⊕21.]

Partition by George F. Burchell against Richard W. Burchell and others. Judgment for plaintiff against defendant Morrison, and question of his liability for the use and occupation of the premises referred. Motion to confirm referee's report denied.

Fred L. Gross, of Brooklyn, for plaintiff.
Coombs & Wilson, of Brooklyn, for defendant Morrison.
Geo. W. McKenzie, of Brooklyn, for defendant executors.

CROPSEY, J.   Here is a motion to confirm a referee's report, made after the entry of final judgment in a partition action holding the defendant Morrison liable for the rental value of a portion of the property affected by the action.   The judgment provided that the question of the liability of Morrison for the use and occupation of the premises in question be reserved, and determined after the entry of judgment.   Morrison objects to the confirmation of the report, and claims he should not be charged with the rental value of any portion of the property.

[1, 2] If Morrison is to be charged with the rental value of the premises, the lease of those premises formerly taken by him would be prima facie proof of their rental value.   McCarty v. Ely, 4 E. D. Smith, 375; Dorb v. Waybright (Sup.) 121 N. Y. Supp. 584; Morrell v. Cawley, 17 Abb. Prac. 76; Ten Eyck v. Houghtaling, 12 How. Prac. 523–530.   And interest would be properly chargeable on such

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

value. Van Rensselaer v. Jewett, 2 N. Y. 135, 51 Am. Dec. 275; Wilson v. City of Troy, 135 N. Y. 96–104, 32 N. E. 44, 18 L. R. A. 449, 31 Am. St. Rep. 817; Govin v. De Miranda, 140 N. Y. 474, 35 N. E. 626.

But the main question is whether Morrison is liable for the use and occupation. Morrison is a cotenant with the plaintiff and with the defendants named Burchell, who represent the other interest. If Morrison is liable at all, it is because he has ousted his cotenants, or prevented them from sharing with him the possession of the property. The referee finds there was such an ousting from the whole property in question, and, further, that even if the proof did not warrant such a finding, it did warrant a finding of an ouster from a portion of the premises, and that a presumption followed of an ouster from the whole.

[3] The evidence is, as usual, conflicting upon many points, and wherein there is a real and substantial conflict it is not proposed to review the evidence or to reverse the finding of the referee. The referee saw the witnesses and had the great advantage in determining the question of their credibility in having both seen and listened to them. Any one, either court or counsel, who has had any experience in trying cases, knows that the credibility of witnesses is not to be determined merely upon what they say, but quite as much, and not infrequently more, upon how they say it, and their manner, tone, and demeanor on the stand. A court, reviewing a finding of fact made by a tribunal which has had this great advantage, should seldom, if ever, reverse a finding as against the weight of evidence when there is a real and substantial contradiction in the evidence concerning such matter. All that the reviewing court has before it is the mere words of the witness as they appear in type. All the other factors that so strongly aid in determining credibility, which the trier of the fact had before him, are wholly absent.

[4] In this case there is a substantial contradiction as to a number of matters. The important question here, however, is whether there is any proof to justify the finding that Morrison ousted and excluded his cotenants from the property. In considering this question the testimony given on behalf of the plaintiff will be assumed to be the truth. If that justified the finding, it should not be disturbed. If it did not, then the report cannot be confirmed.

The question divides itself into two parts: (1) Did Morrison keep his cotenants from the possession of the whole of the premises in question? And (2) did he keep them from the possession of any part? A brief statement of the situation must be given before the happenings of June 21, 1912, are stated, which happenings, the plaintiff claims, constituted the ousting. The property in question here consisted of a number of separate booths at Rockaway. They fronted on boardwalks or alleyways, and were used only during the summer season. They had no connection with each other. Prior to 1912 Morrison had leased the interest of his cotenants in all these booths and had paid them rent. His last lease expired in October, 1911, and was not re-

newed. At the close of that year's season Morrison boarded up all the booths, as he had done every year. This was done to protect them. In the spring of 1912 Morrison opened up two of the booths for his own use. There were about a dozen of these booths. The remaining ones were not opened, and continued to be boarded up, as they had been all winter.

[5, 6] The mere fact that Morrison was in possession of the whole or a portion of the premises is no basis for compelling him to pay for their use and occupation. A tenant in common cannot be held liable for the rental value of the premises owned in common, unless he has agreed to pay rent or has ousted his cotenants. Willes v. Loomis, 94 App. Div. 67, 87 N. Y. Supp. 1086; Adams v. Bristol, 126 App. Div. 660, 111 N. Y. Supp. 231; Zapp v. Miller, 109 N. Y. 51–57, 15 N. E. 889. Nor does the fact that Morrison had been the tenant of these premises, leasing from his cotenants their shares, and held over after the expiration of his lease, make him liable. In such a case the presumption is that the cotenant holds over and continues in possession as one of the owners of the property, and not as a tenant. Valentine v. Healy, 158 N. Y. 369–373, 374, 52 N. E. 1097, 43 L. R. A. 667; s. c. 178 N. Y. 391, 70 N. E. 913. But Morrison could not hold two of the booths for his exclusive use and prohibit his cotenants from occupying those with him, even though they were permitted to occupy all the remaining ones. Each cotenant has the right to share in the possession of each of the pieces of property owned in common. Izard v. Bodine, 11 N. J. Eq. 403–406, 69 Am. Dec. 595; Starks v. Kirchgraber, 134 Mo. App. 211–213, 113 S. W. 1149.

[7, 8] This action had been pending for years, but shortly before the day when the alleged ouster is claimed to have taken place, certain proceedings had been had in it which must be noted. The plaintiff and the defendants Burchell had moved for the appointment of a receiver. This application was unopposed by Morrison, and was granted, and a receiver was appointed of the whole property. This order was signed June 13, 1912. The receiver actually obtained his bond, and it was approved by the court and given to the plaintiff's attorney to file. All this was done before June 21, 1912. It transpired that the plaintiff's attorney did not file the bond; in fact, it never was filed. But the fact that it was not filed was not known either to Morrison or his attorneys until long after the alleged ousting. On June 17, 1912, by arrangement, the receiver visited the property in company with all the parties and their attorneys. There he saw Morrison and demanded from him the possession of the premises. Morrison made no objection to surrendering possession, and told the receiver to take possession, but said he would like to keep possession of the two booths which he was occupying. The receiver went through all the property and examined it. Two days later the attorneys and the receiver appeared before the court which had appointed the receiver, and there discussion arose as to what should be done by the receiver. This was on June 19, 1912. At that time the fact that Morrison was in possession of two of the booths was stated to the court. Plaintiff's attorney

insisted that Morrison be removed. Morrison's lawyer opposed such action, and claimed he could not be removed, as he was a tenant in common. Evidently the court held in accordance with the contention of Morrison's attorney, for in an order entered a few days later as a result of this conference it is provided that the receiver "is directed not to disturb Morrison's possession" of the portion occupied by him (namely, the two booths), and that the question of whether he should be obliged to pay rent for them be left until the report of sale was made.

Two days after this conference and apparent decision of the court (the order thereon was not actually signed until some days later) plaintiff and the defendants Burchell, with their attorneys and a number of other people, went to the property in question. No notice of their visit was given to Morrison or his attorneys. They brought with them a quantity of lumber and other materials, and the things that then happened were those which plaintiff claims constituted an ouster, which made Morrison liable, as the referee has found. Of all the people who accompanied the plaintiff on this day, but one was called as a witness before the referee, and he was the attorney for the defendants Burchell. He testified that the plaintiff and the defendants Burchell put their lumber and other materials on the walk or alleyway, and then tried to enter the two booths occupied by Morrison. He said that no attempt was made to enter any of the other booths.

After the plaintiff had rested his proof before the referee, and Morrison had introduced his proof, the printed record on appeal in an action for assault that arose out of the occurrences of that day was received in evidence by the referee. On that trial the plaintiff and others of his party testified, but none of them claimed that any attempt had been made to enter any of the booths, or to take possession of any portion of the property, except the two booths occupied by Morrison. It is clear from their evidence that the only attempts to take possession were directed to the two booths occupied by Morrison. There was no attempt to take possession of the whole property. The referee finds to the contrary, apparently basing his finding on the statement of one of Morrison's witnesses in the assault action. This, however, was explained by the witness in the hearing before the referee, and even if it had not been, in the face of the positive statement of the plaintiff and his witnesses that the only attempts to enter the premises were directed to the two booths occupied by Morrison, that must be accepted as the fact. The referee further held that Morrison had excluded his cotenants from the two booths, and thus there was a presumption of an exclusion or ouster from all the booths. No authority was cited for this proposition, and it is difficult to appreciate its legal force. The booths were in no way connected. Entrance to the booths occupied by Morrison would not aid to effect an entrance to the others. There can be no presumption of an ouster from the other booths, even if the facts justified a finding of an ouster to the two which Morrison occupied.

On that day Morrison and his attorneys believed that the receiver

was in possession of all of the property, except the two booths which Morrison occupied. The receiver had demanded possession several days previously, and it had been granted him, and the hearing before the court two days previously had determined that the receiver should not disturb Morrison's possession of the two booths, but as to the remainder of the booths the receiver was authorized to expend moneys in equipping them with gas, water, and sewer connections. On this 21st day of June Morrison did not claim to be in possession of any portion of the premises, except the two booths. To hold there is any presumption of an exclusion from the remaining booths, under these facts, even if there was an exclusion from the two held by Morrison, would be wholly unwarranted.

As to the two booths used by Morrison, the plaintiff's claim of what happened is briefly as follows: When they arrived at the property they told Morrison that they "came down to *take* possession" of it. They made no statement that they came down to *share* its possession with him. On the contrary, their statement clearly indicated, as well as their acts, as will later be shown, that they intended to oust Morrison from the possession and to take it for themselves. When they told Morrison of their intention to take possession of the property, he asked them for their authority, and said, if they showed their authority to do so, he would acquiesce. This is the statement of the plaintiff's own witnesses. Then attempts were made to take possession. Long joists, 10 or 12 feet in length, were carried towards the two booths. Morrison's sons and others resisted the attempts, and the plaintiff and his associates finally abandoned their efforts. One of plaintiff's witnesses said the object of trying to take in the joists was to partition off a portion of the property; but this purpose was not told to Morrison. This interference by Morrison's sons and others, plaintiff claims, constituted an eviction or ousting. But in view of all that had taken place it seems clear that there was no denial by Morrison of the right of his cotenants to *share* the possession of the two booths with him. This must follow from the following facts: The appointment of the receiver, the visit of the receiver, and his demand for possession which was granted; the happenings in court on June 19th, and the determination of the court that Morrison might remain in possession of the two booths; the fact that no notice of any kind was served on Morrison demanding that he permit his cotenants to share the possession with him; the fact that no claim was made that they wanted to share the possession, but, on the contrary, that they asserted on the day of their visit that they came to take possession; the use of the joists, and the presence of the number of men who came with the plaintiff. All these and other matters do not seem to justify a finding that Morrison excluded his cotenants from sharing his possession. Every move of the plaintiff seemed to indicate an intention to oust Morrison and he had a right to oppose such attempts.

[9-11] A tenant in common has no right to oust his cotenant by force or otherwise. Wood v. Phillips, 43 N. Y. 152. Morrison did not deny his cotenants' rights nor did he deny them a share in the

possession of the booths, so there was no exclusion or ouster (Edwards v. Bishop, 4 N. Y. 61–65); and plaintiff could not partition off a portion of the booth occupied by Morrison (McGarrell v. Murphy, 1 Hilt. 132; Mumford v. Brown, 1 Wend. 53, 19 Am. Dec. 461). Each cotenant must exercise his right to a common possession in such a way as not to interfere with the right of possession of the other cotenants. C. C. Land Ass'n v. Lohbauer, 187 N. Y. 106–111, 79 N. E. 844. The court is assuming that all that Morrison's sons did on the day in question was authorized by Morrison, as there is proof tending to show this fact and it has been found by the referee. But it seems clear that they were justified in resisting the attempts made by the plaintiff and his forces, as those attempts were not to obtain a share in the possession of the two booths, but to obtain the whole possession of them and exclude Morrison from his occupancy. The plaintiff and the defendants Burchell evidently did not make this visit in order to share in Morrison's possession, but rather to make evidence as a basis for a claim against Morrison for use and occupation.

It follows that the report of the referee is not sustained by the proof and that it cannot be confirmed. Settle order on notice.