THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON v. THE WOODCLIFF LAND IMPROVEMENT COMPANY.

Argued November 8, 1906—Decided February 25, 1907.

1. The defendant conveyed land to the plaintiff for the purpose of a road to be built according to grades shown upon a map. *Held,* that adjoining land of the defendant was burdened with the lateral support of a road built in accordance with the terms of the deed.

2. The lessor of lands is liable for a nuisance created by the lessee where the premises are demised for the purpose of creating the nuisance; where the nuisance is the necessary, contemplated or probable result of the use of the premises for the purposes for which they are leased, or where the nuisance is created by the lessee with the license or consent of the lessor.

3. A landowner who permits another to create a nuisance upon the land is liable to one who is injured thereby.

---

On demurrer to declaration.

Before Justices HENDRICKSON, SWAYZE and TRENCHARD.

For the plaintiff, *John Griffin.*

For the defendant, *Abel I. Smith* and *Gilbert Collins.*

The opinion of the court was delivered by

Swayze, J. The defendant has demurred to two counts of the plaintiff's declaration. The first count avers that the defendant conveyed to the plaintiff certain land therein described, more particularly shown on a map delivered with the deed, for the uses and purposes of a branch or connecting public road in the county of Hudson, in pursuance of the act of April 7th, 1888; that the conveyance was made upon the express condition that the road, when built, should at certain points marked on the map be according to the grades shown on the map; that the plaintiff constructed a road in strict conformity with the grants, covenants, conditions, restrictions and provisos therein contained; that the construction was completed May 1st, 1897, and maintained by the plaintiff continuously thereafter; that the road was constructed of macadam, with a parapet and retaining wall on the easterly side, varying in height above the adjacent soil to the east, from six to twenty feet; that outside of the retaining wall, at the time of the delivery of the deed and the construction of the road, the earth, in its natural state, extended on the horizontal in an easterly direction three hundred feet to the edge of a bluff, from which there was a sharp descent of one hundred and eighty feet to the foot of the bluff at the westerly shore of the Hudson river; that the plaintiffs were lawfully entitled to have sufficient of the earth in its natural state remain to support the road and the retaining wall; that the defendant leased to the Clinton Point Stone Company, for fee or reward, the land of the defendant lying to the east of the lands conveyed to the plaintiff, "for the purpose of excavating, blasting away and removing the rock, stone and earth so near the easterly side line of said road, over the lands above described, forming the lateral support of the said road * * * as to expose the said road * * * to the peril of falling; and did also license and permit said Clinton Point Stone Company and others * * * to excavate, blast away and remove the earth, soil and rock so near the easterly side line of said road, over the lands above described, forming the lateral support of the said road

\* \* \* as to expose the said road \* \* \* to the danger of falling;" that the Clinton Point Stone Company, pursuant to the lease and license, blasted away and removed the earth, rock and soil in conformity with the lease and license of the defendant, by means whereof the rock and earth caved, subsided and fell down, and the road was damaged.

The second count omits the averment as to the lease and avers that the defendant licensed and permitted the stone company to enter the lands of the defendant for the purpose of excavating, blasting away and removing the rock and stone, with the right in the defendant to remove the stone company and others from and off the lands, especially if the stone company blasted and excavated the rock, earth and soil so close to the easterly line of the road as to endanger the falling of the road; that the stone company, with the knowledge of the defendant, commenced blasting away, excavating and removing the earth, rock and soil so near the line of the road as to endanger its fall; that the defendant did not and would not cause the stone company to desist and refrain from so blasting, excavating and removing the rock, soil and earth, but, with full knowledge of the premises, permitted the stone company to blast so near the line of the road that it caved, subsided and fell down.

Whether the facts stated show an injury to the plaintiff depends upon the right of the plaintiff to lateral support. It is settled law in this state that ordinarily the duty of lateral support of a neighbor's land is limited to the support of the land in its natural condition. *McGuire* v. *Grant,* 1 *Dutcher* 356; *Schultz* v. *Byers,* 24 *Vroom* 442. Unless, therefore, this case contains some feature which distinguishes it from an ordinary case, there was no duty of lateral support of the added burden of the road. We think that there are facts in this case which take it out of the ordinary rule and require an inference of an implied grant of an easement of lateral support for the road. The declaration avers that the land of the plaintiffs was conveyed to them by the defendant for the purpose of a road, to be built according to grades shown upon a map, and that the road was built in accordance

with the covenants and provisos of the deed. The mainte-
nance of such a road required support from the adjacent land
of the defendant, and the parties must be held to have con-
templated this necessity and to have allowed for the detriment
to the defendant caused by the increased burden upon its land
in determining the consideration for the conveyance.

A similar question has arisen in the English courts. In
*Caledonian Railway Co.* v. *Sprot,* 1 *Pat.* (*Sc. App.*) 633,
642; *S. C., 2 Macq. H. L. Cas.* 449; 17 *Eng. Rul. Cas.*
686, it was held by the house of lords that the grantor in a
conveyance to a railway company by implication conveyed to
the company the right to all necessary support of their line
of railway, and could not derogate from that conveyance by
working mines and removing that support, although he had
by the conveyance reserved the mines to himself and his heirs,
with full liberty to win and work minerals. Lord Cranworth
said: "Independently of any provisions contained in the act
of parliament, the effect of that conveyance was to convey the
land to be covered by the railway to the company, together
with a right to all reasonable subjacent and adjacent support.
A right to such support is a right necessarily connected with
the subject-matter of the grant. If the owners of a house
were to convey the upper story to a purchaser, reserving all
below the upper story, such purchaser would, on general
principles, have a right to prevent the owner of the lower
stories from interfering with the walls and beams upon which
the upper story rests so as to prevent them from affording
proper support, so far, at all events, as to prevent a person
who has granted a part of his land from so dealing with that
which he retains as to cause what he has granted to sink or
fall. How far such adjacent support must extend is a ques-
tion which, in each particular case, will depend on its own
special circumstances." This case was decided on a Scotch
appeal in 1856. A similar question arose in England in
1860. *Northeastern Railway Co.* v. *Elliott,* 1 *J. & H.* 145;
2 *DeG. F. & J.* 423; 10 *H. L. Cas.* 333. The case is also
reported in 29 *L. J., Ch.* 808; 30 *Id.* 160; 32 *Id.* 402. The
case was therefore very thoroughly discussed, and it was

held that a conveyance granting land for a special purpose must be construed as conveying all the rights necessarily incident to the due execution of that purpose. The latter case was somewhat complicated by the fact that there were statutory provisions for the case of mines lying under lands purchased by the railway company. The appellant contended that the rights of the company were defined by the act, and that the rule of the common law in regard to lateral support over adjacent lands was altogether excluded. Lord Chelmsford, however, thought that the case was controlled by Caledonian Company *v.* Sprot. In answer to the contention on the part of the appellant that that case was a case of a voluntary conveyance, while the Elliott case, although in form a voluntary conveyance, was to be regarded as compulsory since the company had power to condemn lands, he said that whether voluntary or compulsory, every grant must carry with it all that is necessary to the enjoyment of the subject-matter of it, and therefore, if a certain grant of lateral support was essential to the safety of the railway, the right to it must pass as a necessary incident to the grant. The authority of these cases was subsequently recognized by the house of lords in *Great Western Railway Co.* v. *Bennett, L. R., 2 H. L. 27;* 36 *L. J., Q. B.* 133; 17 *Eng. Rul. Cas.* 706, and in the great case of *Dalton* v. *Angus,* 6 *App. Cas.* 740; 50 *L. J., Q. B.* 689; 10 *Eng. Rul. Cas.* 98, decided in the house of lords in 1879, Lord Selborne, while recognizing the general rule that the right of lateral support generally was applicable only to lands in their natural state, said that a right to the support of lands weighted by artificial structures would be sustained as a matter of grant, upon the authority of Caledonian Railway Company *v.* Sprot. That case has also been followed in the still more recent case of the *Great Western Railway Co.* v. *Cefn Cribbwr Brick Co.* (1894), 2 *Ch.* 437; 63 *L. J., Ch.* 500.

We think the view taken by the English courts is based upon a correct principle, and that to allow the defendant to maintain that there was no right of lateral support in this case except of the lands in their natural state would allow

him to derogate from his own grant, which was for the express purpose of a road to be built at the grade at which this road was built.

It was argued on behalf of the defendant that the conveyance for the purpose of a highway did not involve necessarily the burdening of the surface with a retaining wall or other burdens. In the case of an ordinary highway which conforms to the natural surface of the ground, this might possibly be true, but by the very terms of the grant to the plaintiff the road was required to be constructed according to certain grades and was actually constructed, as the declaration avers, in accordance therewith. It is a fair inference that these conventional grades differed from the natural grade of the ground, and must at some points have required fills. It is true that the declaration does not aver that the retaining wall was necessary for the purpose of the road, and if it appeared that the injury to the plaintiff was due to the increased weight of the retaining wall it might be arguable that the declaration should show by proper averments the necessity of the retaining wall; but as far as appears from the declaration the retaining wall in no way contributed to the injury, and in view of the averment that the lease to the stone company was for the purpose of excavating and blasting so near the road as to expose the road itself to the peril of falling, and the further averment that the rock, earth and soil of the road caved, subsided and fell down by reason of the acts of the stone company, we think we ought not to infer that the injury was caused by the increased weight of an unnecessary retaining wall.

The question remains whether the defendant is responsible for the injury complained of. The acts which resulted in that injury were not the acts of the defendant, but of its lessee, the Clinton Point Stone Company. This court has held, in *Ingwersen* v. *Rankin,* 18 *Vroom* 18, that if a nuisance is created during a term already existing no liability falls on the landlord pending that term, for the reason that he has no legal means of abating the nuisance; and it seems to be settled, in the English courts, that where the nuisance arises

solely from the act of the tenant during his term the land-lord cannot be held liable. *Rich* v. *Basterfield,* 4 *C. B.* 783; *Russell* v. *Shenton,* 3 *Q. B.* 449. It was settled in this court, by Ingwersen *v.* Rankin, that where the nuisance existed at the time of the demise an action would lie against the lessor. The present case involves the question, which was left unde-cided by Ingwersen *v.* Rankin, whether the lessor is liable for a nuisance which is a necessary, contemplated or probable result of the use of the premises for the purposes for which they are leased. We can see no distinction in principle be-tween the liability of the lessor who demises premises with an already existing nuisance and the liability of a lessor who demises premises for a purpose the necessary result of which is a nuisance, and the case is much stronger against a lessor who demises premises for the very purpose of creating a nuisance. In such a case he participates in the creation of the nuisance, either by authorizing it or by making the act of the tenant his own. It would be manifestly wrong to allow the lessor to escape liability merely by demising the premises in order that the nuisance might be the original act of the lessee only. The authorities sustain this position. One of the early cases is *Fish* v. *Dodge,* 4 *Den.* 311, where Chief Justice Bronson likened the case to that of a man who might be indicted and punished for keeping a bawdy house where he had rented a tenement for that purpose. Other cases to the same effect are *House* v. *Metcalf,* 27 *Conn.* 640; *Jack-man* v. *Arlington Mills,* 137 *Mass.* 277; *Samuelson* v. *Cleve-land Iron Co.,* 49 *Mich.* 164; *Fow* v. *Roberts,* 108 *Pa. St.* 489. The more recent case is found in the English reports. *Harris* v. *James,* 45 *L. J., Q. B.* 545. It has been held, with equal reason, that where the nuisance is created by the lessee with the license or consent of the lessor, the latter is liable. *Twiss* v. *Baldwin,* 9 *Conn.* 291; *Riley* v. *Simpson,* 83 *Cal.* 217. The averments of the first count demurred to bring this case within this rule. It is averred that the defendant leased the premises to the stone company for the purpose, not merely of blasting and removing rock, but for the purpose of removing and blasting rock so near the road as to expose the road to the peril of falling.

The second count, however, must rest upon a different basis, for it avers a license for the purpose of blasting and removing rock, subject to the right of the defendant to remove the licensee if the latter blasted so close to the road as to endanger its fall. The last averment seems inconsistent with any purpose on the part of the lessor to infringe the rights of the plaintiff. The liability of the defendant upon the second count must rest upon other principles. That count contains an averment that the defendant permitted the stone company and others to blast and remove rock so near the line of the road that the latter caved, subsided and fell down. The effect of these averments is that the original license did not permit the stone company to injure the plaintiff, but that subsequently such injury was permitted. The defendant is then in the position of an occupant of land who suffers a nuisance thereon. He is not within the reason of the cases which exempt a lessor for a nuisance arising after the lease, for he can enter at any time and abate the nuisance; the land is his and no term of a tenant stands in his way. *White* v. *Jameson, L. R.,* 18 *Eq. Cas.* 303. We therefore think that the second count also states a cause of action against the defendant.

For these reasons, the plaintiff is entitled to judgment upon the counts demurred to.