## Nebo Consolidated Coal & Coking Co. v. Lynch.

(Decided January 24, 1911.)

### Appeal from Hopkins Circuit Court.

1. Nuisance.—Is anything done to the hurt or annoyance of the lands, tenements or hereditaments of another.

2. Nuisance in Operation of Mine.—The fact that a mine is carefully and prudently operated does not relieve the owner from liability for injuries done to the land of others by the acts of the owner in placing slack, copperas and other deleterious substances on his land in such a way as that they will wash upon the adjacent land, injuring its fertility.

JONSON & JENNINGS, for appellant.

GIBSON & KICHELOE, for appellee.

Opinion of the Court by Judge Carroll—Affirming.

In this action by the appellee Lynch against the appellant company to recover damages for injuries done to his land, the petition averred that the appellee was the owner of a tract of land adjoining the land owned by the appellant company, on which it had its buildings and mining machinery, and that:

"In operating its coal mine, it has continuously since the year 1906 unlawfully, negligently and carelessly thrown from its said mine slack, copperas and other deleterious substances, into a branch, with a deep and well defined channel, that runs through the lands of the company as well as his lands; *　*　* and has continually, since the year 1906, unlawfully and negligently placed a large quantity of slack, copperas and other deleterious substances in and near said water course, and said copperas and other deleterious substances so placed have been continually since the year 1906 by ordinary rains washed into said water course and down same on plaintiff's land; and said water course, where it passes through his land is now and has been for more than one year filled up with slack, copperas and other deleterious substances *　*　* and has unlawfully and carelessly pumped ·from its coal mine, copperas water and thrown same where it would naturally run in said water course, and through and over his land; he says that as a direct and proximate result of these negligent acts, twenty-five acres of his land lying on said water course has been covered by slack, copperas, copperas water and other deleterious substances, which injured the fertility of the land and permanently destroyed the market value thereof."

In the first paragraph of its answer the appellant traversed the averments of the petition. In the second paragraph it set out in substance that in 1904, it purchased a large body of land, and the mineral and mining rights in adjoining lands, including the land of appellee; and at a large expense erected its machinery, buildings and other appliances for mining and taking out coal which it had purchased; and began the mining and shipping of coal from its mine. That the right to mine and remove the coal constitute the only value to it of said land and other rights purchased by it; and that its buildings, machinery and equipment are situated on land that lies above the drainage level of appellee's land, so that the water falling or originating thereon naturally flows

over the land of appellee, and into the water course described in the petition. It further set out that it had at all times employed unusual care to avoid doing any injury to the lands of appellee, but that in the exercise of ordinary care and in the usual and customary method of operating its mine, it is necessary that it should pump on its land water from its mine, and throw on its land refuse from the mine; and that to deprive it of this privilege will work great and irreparable injury to it. It further set up that appellee knew that it was expending large sums of money in establishing its plant, and that it was necessary that it should operate it in the usual and customary manner, and that it was induced by his acts to believe that he would make no objection to or claim any damages for any injury done to his land by it in the usual and customary method of mining. It further averred that it has purchased for a valuable consideration from appellee all the coal and other mineral rights upon the land that he claims has been injured, and that he was estopped to assert any damage done to the surface of the land which he retained on account of the careful and proper operation of its mine.

The court struck out so much of the answer as pleaded that appellee could not recover damages resulting from the proper, customary and careful operation of its mine, and as sought to estop him from asserting a claim for damages on account of his acts in not objecting to the erection and equipment of its mine, and by reason of the fact that he had sold and conveyed to it the right to the coal and other minerals under the surface of the land that was injured by the copperas and other substances thrown upon it.

Upon a trial before a jury, the appellee was awarded damages in the sum of $700. The grounds of reversal relied on are alleged errors of the court in striking from the answer the defenses relied upon, in giving instructions to the jury, and that the amount allowed is excessive.

The action was really one to recover damages for a nuisance, because whatever name may be given to the acts that constituted the injury, they were in law a nuisance, as a nuisance is "anything done to the hurt, or annoyance, of the lands, tenements or hereditaments of another." Blackstone's Commentaries, Vol. 3, page 215. And that the petition stated a good cause of action, we have no doubt. Crabtree Coal Mining Co. v. Hamby, 28 Ky. Law Rep., 687; Kinnaird v. Standard Oil Co., 89

Ky., 468; Lockwood v. Lawrence, 77 Me., 297, 52 Am. Rep., 763. In the Hamby case, supra, in which the facts were substantially the same as in this case, we said:

"The company in using its right of way was required to conform to the rule that one must always use his own property with due regard to the rights of others. The coal company had no right under its grant to maintain its track in a way that would be injurious to Hamby, in diverting the surface water from its natural flow or obstructing the channel of the creek, nor did it have the right to place upon its right of way where the water would take it over Hamby's land anything that would injure Hamby, where a person of ordinary care would know that the water would take it upon Hamby and that it would be destructive to his property. While a coal company may properly use slack, where it will not injure others, it has no right to place it upon the land of another, and it is equally to be blamed if it places it where it is evident nature will take it over the land of another. * * * The company has no right to run its slack into the creek and fill up the channel. It has no right to poison the waters of the creek. * * * It is impossible in the nature of things that a running stream should not receive certain impurities as it passes along, and every owner along its course is entitled to its use, but in using the stream every owner must exercise his rights with due regard to the rights of the lower proprietor."

Following the rule announced in this case, which is in accord with the weight of authority, the paragraphs of the answer stricken out constituted no defense for the company. The fact that it was prudent and careful did not relieve it from liability for the injury that was done to appellee's land by its acts. If the rule contended for by counsel for appellant was sound, then owners of land would be without remedy, although their land for agricultural purposes might be destroyed by the acts of adjacent owners, if it could be shown that these acts were performed in the usual and customary manner.

Nor did the deed made by appellee to appellant, conveying the right to the coal and minerals under the surface of his land give it the right to pollute a stream of water running through his land or to destroy the fertility of his land by throwing upon the surface of it copperas and other substances.

In the instructions the court told the jury in substance that if they believed from the evidence that Deer

Branch was a natural water course, running near defendant's mine, through the land of the company and the land of appellee, and that the company in the operation of its coal mine negligently or carelessly placed slack, copperas, copperas water, debris or other deleterious substances on its land near the branch, and they were placed so near the stream as to pass off or run into the branch, causing it to fill up or to cast poisoned water and substances upon the land of appellee, thereby destroying the same for agricultural purposes, they should find for him such a sum as would reasonably compensate him for the damage, if any, in the reasonable market value of the land. In short, the instructions confined the jury to the inquiry whether or not the appellee's land was damaged by the acts of the appellant, and if so, the amount thereof. The court properly ignored the questions made by appellant, as to its immunity from liability if it operated its mine in a careful and prudent manner, or in the way that coal mines are usually operated, and its exemption growing out of the fact that appellee had conveyed to it the mineral rights in the land, the surface of which was damaged. We think the instructions submitted the only issue in the case.

Upon the question as to the amount of the verdict, the evidence is conflicting, but we think there was sufficient to show that the reasonable market value of appellee's land was damaged in the amount the jury found.

Wherefore, the judgment is affirmed.