JEWEL TEA CO., Inc., v. EAGLE REALTY CO. et al.

Civil Action No. 244–46.

District Court, D. Nebraska, Omaha Division.

April 11, 1947.

Leo Eisenstatt, of Kennedy, Holland, DeLacy & Svoboda, all of Omaha, Neb., for plaintiff.

Harry Cohen, of Monsky, Grodinsky, Marer & Cohen, all of Omaha, Neb., for defendant.

DONOHOE, District Judge.

The Jewel Tea Co., Inc., has brought this action against the Eagle Realty Company, a corporation, and David, Richard, Barney and Irving Hoberman for a declaratory judgment under Section 274d of the Judicial Code, 28 U.S.C.A. § 400, as to the validity of a written lease.

The case having been tried without a jury, the court now makes the following special

## Findings of Fact.

1. The plaintiff is a New York corporation duly licensed, qualified, and authorized to do business in the State of Nebraska.

2. The corporate defendant is a Nebraska corporation with its principal place of business in Douglas County, Nebraska, and the individual defendants are citizens and residents of the State of Nebraska.

3. The plaintiff, as lessee, occupies a warehouse and office building located in Omaha on real estate described as: The east eleven (11) feet of Lot Seven (7) and all of Lot Eight (8) in Block Forty-five (45) in the original city of Omaha, as surveyed, and lithographed in Douglas County, Nebraska, which also bears the street address 1806 Chicago Street in said County and City.

4. On July 17, 1926, Delia Jamieson, a widow then owning the premises described in special finding No. 3, leased the premises to the plaintiff for a period of ten years ending on June 30, 1936. The lease, a photostatic copy of which was duly offered and received in evidence as Exhibit 4, gave the plaintiff an option to extend the lease for a further term of five years.

5. On January 8, 1931, Delia Jamieson died intestate and left surviving her eight

children, who then varied in age from thirty-seven to fifty years.

6. On January 19, 1931, a petition for the appointment of an administrator of the estate of Delia Jamieson, Deceased, was filed in the county court of Douglas County, Nebraska. On February 11, 1931, William N. Jamieson, a son and one of the heirs, was appointed administrator.

7. Between January and December of 1931, the administration of the estate of Delia Jamieson was substantially completed. On June 9, 1931, the county court entered an order barring claims. On December 8, 1931, the administrator filed an inventory. From the latter date until June 21, 1945, no action occurred in the county court relative to the decedent's estate except for two matters noted in special finding No. 8.

8. On July 8, 1936, the administrator filed an application in the county court asking for approval of an extension for a three year term of the lease which had been entered into between the decedent, during her life time, and the plaintiff. Rental was reduced from $190 to $140 per month. On March 23, 1939, the administrator filed a similar application for approval of an extension of the lease for a five year term from July 1, 1939, at the same rental. In both instances, orders approving extensions of the lease were entered by the county court. Renewal and Extension Agreements extending the term of the lease were entered into between the plaintiff and William N. Jamieson.

9. On May 29, 1944, William N. Jamieson and the plaintiff executed an instrument entitled "Extension of Lease and Supplemental Agreement", a photostatic copy of which was duly offered and received in evidence as Exhibit 7, leasing the premises to the plaintiff for a term of three years ending on June 30, 1947, at a rental of $140 per month, and giving the plaintiff an option to renew the lease for an additional two year period beyond June 30, 1947. Approval of the county court for this extension of the lease was not secured.

10. All of the agreements renewing and extending the term of the lease after the death of Delia Jamieson were executed by the plaintiff and William N. Jamieson "as administrator of the Estate of Delia Jamieson."

11. No steps for closing the administration of the estate of Delia Jamieson were taken in the county court until June 21, 1945, when Walter Jamieson, one of the heirs, filed a motion for an order requiring the administrator to show cause why a final account should not be rendered.

12. On June 27, 1945, William N. Jamieson filed in the county court his final report and account as administrator. This report covered total receipts and disbursements from 1931 until the date of the report, including an item of $28,070 as cash rentals received from the Jewel Tea Co., Inc., and payments of $22,150 to the Omaha Loan & Building Assn., as principal and interest on a mortgage covering the leased premises. The mortgage debt, which was in the amount of approximately $17,000 at the time of the decedent's death, had been reduced to about $3,000 by 1946, when the premises were sold at a partition sale. Total receipts shown by the report were $59,655.20; total disbursements were $58,276.27, including advances of amounts ranging from $250 to $1,869 to certain heirs. Expenditures shown were largely for items of maintenance and repairs of premises owned by the decedent.

13. On June 29, 1945, William N. Jamieson filed a petition in the county court for approval and settlement of his final report as administrator. On July 25, 1945, the county court entered a decree approving the final report, barring all creditors' claims, and determining the heirs.

14. Between the date of the final decree on July 25, 1945, approving the administrator's report, and the final discharge of the administrator on May 14, 1946, a suit for partition of the premises leased to the Jewel Tea Co., Inc., was commenced in the district court of Douglas County, Nebraska, by David F. Jamieson, one of the decedent's heirs. The Jewel Tea Co., Inc., was not made a party in the partition suit, and the administrator was not required to pay rentals collected into court.

15. On February 21, 1946, the district court of Douglas County, Nebraska, ordered the referee in the partition suit to sell the premises at public sale "subject to the rights of tenants in possession."

16. On April 5, 1946, the premises were sold at a referee's sale to David, Richard, Barney and Irving Hoberman, as joint tenants with right of survivorship, for $36,000. The sale was confirmed by the district court on April 10, 1946. By a referee's deed dated June 20, 1946, the referee conveyed the premises to the purchasers as joint tenants with the right of survivorship "subject to the rights of tenants in possession."

17. By a warranty deed dated June 19, 1946, Barney, Richard, David and Irving Hoberman, with their wives, conveyed the premises to Eagle Realty Company, a corporation. This deed recited as consideration the sum of $1.

18. From the time of the filing of the administrator's final report on June 27, 1945, until the time when the leased premises were transferred by the referee's deed, dated June 20, 1946, to the purchasers at the sale in the partition suit, the Jewel Tea Co., Inc., continued to pay monthly rentals to William N. Jamieson by checks in the amount of $140, payable to him "as administrator of the estate of Delia Jamieson." These checks covering rentals for 12⅔ months were deposited by William N. Jamieson in a bank, and the proceeds were used by him to make payments on taxes and the mortgage covering the leased premises; the balance being distributed to the other heirs in their shares of the estate.

19. Because of the amount of the mortgage on the leased premises and the then prevailing prices of real estate, the estate of Delia Jamieson was not closed in 1931, but was permitted by William N. Jamieson and all of the remaining heirs to continue in a state of administration for the purpose of allowing William N. Jamieson to conserve and manage the property.

20. During the period between 1931 and June 21, 1945, when Walter Jamieson took steps in the county court to require the administrator to show cause why his final account should not be rendered, none of the heirs voiced any objection to the way in which the decedent's estate and property was being handled and managed by William N. Jamieson.

21. During the period from 1931 until some time after the execution of the most recent written agreement extending the lease from July 1, 1944, to June 30, 1947, the heirs of Delia Jamieson conducted themselves, at least for all practical purposes, as co-tenants or co-owners, acting through William N. Jamieson, not in his capacity as administrator, but as a managing and rental agent for the heirs.

22. The remaining heirs of Delia Jamieson consented to or acquiesced in and ratified the acts of William N. Jamieson in managing and leasing the property covered by the lease now in controversy. These acts of William N. Jamieson resulted in benefits enuring to the remaining heirs, and the heirs have accepted and retained these benefits.

23. The individual defendants Hoberman, as purchasers at the referee's sale in the partition suit, now stand in the position of the decedent's heirs with respect to the force and effect of the lease.

24. There is no evidence that the corporate defendant stands in any position different from that of the individual defendants with respect to the force and effect of the lease, and the court finds that, as between the parties and for the purpose of this suit, the lease is valid and effectual as against both the individual defendants and the corporate defendant.

25. There is no evidence or claim by the defendants that the plaintiff has breached or failed to observe any covenant or agreement in the lease, and the plaintiff has, by averments in its complaint, alleged a tender of all rentals due under the lease, and that the plaintiff continues to hold the tender open.

26. The value of the lease now in controversy exceeds the sum of $3,000, exclusive of interest and costs.

27. An actual and substantial controversy now exists between the plaintiff and the defendants over the validity and effect of the lease and as to whether the same now constitutes a binding contract.

## Opinion.

In the comparatively recent date of J. H. Melville Lumber Co. v. Maroney, 145 Neb. 374, at page 378, 16 N.W.2d 527, 529, the Supreme Court of Nebraska, quoting from the case of Johnson v. Colby, 52 Neb. 327, 72 N.W. 313, said: "Where an ancestor dies intestate, his lands descend instantly to his heirs. It does not require settlement of his estate, or a probate order declaring heirship, to vest the title." See also Shellenberger v. Ransom, 41 Neb. 631, 59 N.W. 935, 25 L.R.A. 564, which was seemingly overruled in Veeder v. Mc-Kinley-Lanning Loan & Trust Co., 61 Neb. 892, at page 912, 86 N.W. 982. Additional local authority for the rule that title to land in which the ancestor owns an estate of inheritance at the time of his death vests eo instante in the heirs, subject however to payment of debts of the ancestor and the administrator's statutory right to possession (see R.S.Nebraska '43, Sec. 30-406), is found in the cases of Lewon v. Heath, 53 Neb. 707, 74 N.W. 274, and Tillson v. Holloway, 90 Neb. 481, 134 N.W. 232, Ann.Cas.1913B, 78.

While at common law an administrator had no right to the possession or control of the decedent's real estate (see Dame's Probate and Administration for Nebraska, 3rd Ed., Sec. 278; 21 Am.Jur., Executors and Administrators, Sec. 290; 33 C.J.S., Executors and Administrators, § 252a), under R.S.Neb.1943, Sec. 30-406, it is provided that:

"The executor or administrator shall have a right to the possession of all the real as well as the personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees, and shall keep in good tenantable repair all houses, buildings, and fences thereon which are under his control."

It appears that under the law of this state an administrator's right to the decedent's real estate is possessory only, Youngson v. Bond, 64 Neb. 615, 90 N.W. 556; Carson v. Dundas, 39 Neb. 503, 58 N.W. 141, and arises from the land being subject to the payment of debts. Cooley v. Jansen, 54 Neb. 33, 74 N.W. 391. Under the Nebraska statute, an administrator may lease the decedent's lands until debts against the estate have been paid, and the estate is settled. Globe & Rutgers Fire Ins. Co. v. Rose, 8 Cir., 91 F.2d 635.

The question of the validity and effect of leases executed by administrators has been before the Supreme Court of Nebraska in three cases. Jackson v. O'Rorke, 71 Neb. 418, 98 N.W. 1068; Hollman v. J. S. Pattison & Co., 104 Neb. 313, 177 N.W. 162, on rehearing 104 Neb. 846, 181 N.W. 130; and Muller v. Harms, 117 Neb. 657, 221 N.W. 898.

In the O'Rorke case, a decedent's widow, who had been appointed as administratrix and guardian for minor heirs, made final settlement and distribution of the decedent's personal effects in 1894, but was not then formally discharged by the county court as administratrix. The widow, as administratrix and guardian, continued to lease the decedent's real estate from year to year until 1900, when she executed a lease to the defendants Harer for a term of five years commencing on March 1, 1901. The lease was signed by the widow in her individual name, but it was found that in executing the lease she had intended to convey both her personal and representative interests. Two of the decedent's children, who had attained their majority, then brought a partition suit naming the widow, a minor child, and the lessees as defendants. The lessees answered setting up the lease and asking that the partition be made subject to their leasehold interest. The widow was not formally discharged as administratrix until after commencement of the partition suit.

In his opinion in the O'Rorke case, Commissioner Oldham said:

"Now, it appears from the facts in the case at bar that all the debts of the estate had been paid, and distribution of the personal assets had been made by the administratrix nearly six years before the lease in dispute had been executed. We think, then, that under the doctrine set forth in Lewon v. Heath, supra, the right of the heirs to maintain an action for the possession of the real estate accrued on the

payment of the debts and the final settlement of the administratrix, and that thereafter the administratrix, as such, was invested with no authority to further lease the real estate of her intestate." 71 Neb. at page 421, 98 N.W. at page 1070.

We may pass over the case of Hollman v. J. S. Pattison & Co., supra, without discussion since the syllabus containing statements of law which might be applicable in the instant case were withdrawn on rehearing. See 104 Neb. 846, 181 N.W. 130.

Muller v. Harms, supra, arose under the following circumstances: The decedent, during his lifetime, had leased premises to the defendants as lessees for a term of years which expired during the pendency of proceedings for administration of the decedent's estate. About fifteen months after Letters of Administration had been granted, the administrator, with approval of the county court and the consent of the decedent's widow, as natural guardian of the two minor heirs, executed a lease extending the tenancy for a term of five years commencing on January 1, 1926. Some few weeks after execution of the lease, the county court approved the administrator's final account and entered a decree finding that the leased premises passed to the two minor heirs. The administrator was finally discharged on January 14, 1926; the latter date being approximately two years from the time when Letters of Administration had been granted. The defendants continued to pay rentals from January until October 1, 1926, to the plaintiff as the lawful guardian of the minor heirs. By notice, given on September 24, 1926, the defendants attempted to terminate the tenancy as of October 31st of that year. Thereafter the plaintiff brought an action to recover rent due for the months of November and December. The defendants claimed that the lease was void because it extended beyond the date of settlement of the decedent's estate.

In reversing a judgment sustaining a demurrer and dismissing the action, the Supreme Court of Nebraska said:

"At most the statute (previously quoted in this memorandum) made the lease voidable upon a timely exercise of a right to declare it void. Under the statute heirs and devisees of a deceased person are protected in their right to the possession and control of their property upon the settlement of decedent's estate and the discharge of the administrator. He entered into the new lease for the benefit of the two minor devisees, with the approval of their mother, the natural guardian. After execution of the lease, and the discharge of the administrator, while defendants were in possession of the property as lessees, the guardian and the county court elected for the minor to take advantage of the new lease, thus enhancing the value of their patrimony. This election was a proper exercise of power committed by law to the guardian and the county court. Gentry v. Bearss, 88 Neb. 742, 130 N.W. 428. Defendants approached the administrator for the new lease extending the terms of the tenancy, while he was in control of the property, and he accepted their offer with the consent of the natural guardian in addition to authority from the county court. The transaction was free from even a suspicion of fraud on the part of either the administrator or plaintiff. After the administrator was discharged the new lease was effective for the purpose of enabling defendants to retain possession of the property for their own benefit beyond the period fixed by the first lease. By paying to plaintiff for several months the increased rent as stipulated and by continued occupation of the leased premises, defendants recognized plaintiff as the guardian, as the lessor and as the administrator's successor. The lease was thus accepted by both plaintiff and defendants. Plaintiff received her rent and defendants continued to occupy the premises as tenants. Without the consent of plaintiff the lease was not open to rejection by defendants when they gave notice that they would terminate their tenancy." 117 Neb. at pages 660, 661, 221 N.W. at page 899.

■ Under the Muller case, the established rule in Nebraska would seem to be that an administrator's lease for a term extending beyond the time when the estate is settled, and the administrator discharged, is merely voidable and that conduct of the lessee in continuing to occupy the premises and pay rent after the administrator is discharged, coupled with the receipt of rent

**924**

by the decedent's heirs, constitutes an acceptance and ratification of the lease.

Evidence in the instant action discloses this situation. In 1931, administration of the decedent's estate was commenced and carried through to a point where the only remaining steps for closing administration of the estate were the filing of the administrator's final report and obtaining approval thereof, and the securing of a final decree of heirship and distribution, and final discharge of the administrator. With the approval and acquiescence of the heirs, who were at all times persons of mature age, and others interested in the estate, the administration proceedings were then permitted to stand in what might be called a stage of dormancy for nearly fourteen years; the only exceptions being on two occasions when the administrator made application to the county court for authority to renew the lease covering the premises leased to the Jewel Tea Co., Inc. Throughout this period of fourteen years, William N. Jamieson, under designation "as administrator of the estate of Delia Jamieson," collected and received rents from the leased premises, paid taxes and installments on the principal and interest on a mortgage against the property, and, as appears from his final account and report, paid the bills for items of upkeep, repair and maintenance of the property.

Suit for a partition of the leased premises was commenced by one of the other co-owners in December, 1945—some five or six months after William N. Jamieson had filed his final account and report as administrator and secured a final decree approving the account and directing distribution. The partition suit, however, was commenced about five months before William N. Jamieson secured his final discharge as administrator on May 14, 1946. During the month of September, 1945, all of the heirs except one received from the administrator their full distributive share of the sum of approximately $1,300 in cash remaining in the administrator's hands for distribution under the county court's final decree of July 25, 1945, approving the administrator's final report and directing distribution to heirs.

From the time of the filing of his final report and account as administrator in June, 1945, until the time when the leased premises were conveyed on June 20, 1946, to the individual defendants as purchasers at the referee's sale in the partition suit, William N. Jamieson continued to look after and manage the premises in the same way as theretofore. Checks from the Jewel Tea Co., Inc., for monthly rentals which accrued during this time were made payable to William N. Jamieson "as administrator of the estate of Delia Jamieson." Proceeds from these checks were devoted to the same uses as the money from previous checks for rent, i. e. payment of interest and principal on the mortgage, and other expenses connected with the leased property. Although William N. Jamieson received his final discharge as administrator on May 14, 1946, it is observed from the evidence that rent for the month of June in that year was paid to and accepted by him through a check from the tenant dated May 31, 1946, and made payable to William N. Jamieson "as administrator of the estate of Delia Jamieson."

On the evidence in this case, the court concludes that William N. Jamieson was in fact acting not as administrator but in the capacity of an agent in managing the leased property for the remaining co-owners at the time when he and the plaintiff executed the agreement extending the lease for a term of three years from July 1, 1944. It may be legitimately inferred from the evidence that the words "as administrator of the estate of Delia Jamieson" appearing with his name on the renewal agreement and rental checks are descriptio personae, used merely to identify and point out the person intended, and not as referring to him only in his official or technical capacity as administrator.

While a lease of the entire estate executed by one tenant in common without the consent or authority of the remaining co-tenants may be avoided by them unless they subsequently ratify its execution, Jackson v. O'Rorke, supra, 62 C.J., Tenancy in Common, Sec. 214, the act of one tenant in common in leasing the entire property will be binding upon the

remaining co-tenants if authorized, acquiesced in or ratified by them. Co-tenants do not, merely by virtue of their relationship, sustain the relation of principal and agent to each other, Caveny v. Curtis, 257 Pa. 575, 101 A. 853, Warren v. Goodrich, 133 Va. 366, 112 S.E. 687, Goff v. Lowe, 101 W.Va. 57, 131 S.E. 870, 14 Am.Jur., Title "Co-Tenancy", Sec. 82, and are not partners. Perry v. Granger, 21 Neb. 579, 581, 33 N.W. 261. It will not be presumed that a tenant in common entered into an agreement concerning the common property without the consent of his co-tenants. Barton v. Gray, 48 Mich. 164, 12 N.W. 30. In the absence of any evidence to the contrary, it will be presumed that the act of one tenant in common in leasing the property was performed with the knowledge and consent of all the tenants in common. Schwartz v. McQuaid, 214 Ill. 357, 73 N.E. 582, 105 Am.St.Rep. 112. Acceptance by the remaining co-tenants of benefits or rents under a lease executed by one co-tenant constitutes a ratification of the lease. Bessho v. General Petroleum Corporation, 186 Cal. 133, 199 P. 22; Thompson v. Thomas Thompson Co., etc., 132 Md. 483, 104 A. 49; Valentine v. Healey, 158 N.Y. 369, 52 N.E. 1097, 43 L.R.A. 667.

Under the Nebraska statute previously quoted, an administrator's right to possession of the decedent's real estate and to receive the rents therefrom exists "until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs * * *."

This court does not find it necessary to now undertake to define when or at what stage in administration proceedings an estate is "settled" within the contemplation of this statute. However, it is extremely doubtful that a final discharge of the administrator must be obtained before an estate may be said to be settled. The court's opinion in the O'Rorke case, supra, plainly indicates that an administrator's authority to lease the decedent's land ceases after payment of debts and final settlement of the administrator's account, and that thereafter the heirs are entitled to possession of the land, notwithstanding that the administrator has not been finally discharged.

In the case of In re Creighton, 12 Neb. 280, 11 N.W. 313, the Supreme Court of Nebraska, construing provisions of the state constitution giving county courts original jurisdiction in all matters of probate and settlement of estates of deceased persons, said: "The words 'settlement of estates of deceased persons,' evidently refer to the adjustment of the claims and demands in favor or against an estate. They do not necessarily include the word 'distribution,' which is the act of dividing or making an apportionment." 12 Neb. at page 282, 11 N.W. at page 313.

Even if the county court's final discharge of William N. Jamieson as administrator on May 14, 1946, was necessary before the estate was settled within the intendment of the statute, the subsequent acts of the Jewel Tea Co., Inc., in retaining possession of the premises and paying rent for the month of June to William N. Jamieson, plus the receipt of this rent by the decedent's heirs, constituted a ratification of the lease under Muller v. Harms, supra.

That the county court's approval for the last extension of the lease was not secured is immaterial since that approval, if obtained, would have been for the protection of the heirs and it does not appear that any of them have ever claimed any improvidence or impropriety in the leasing of the property.

### Conclusions of Law

1. The lease under which the plaintiff is now claiming is valid and enforceable as against the heirs of Delia Jamieson.

2. The defendants, as purchasers of the leased premises at the referee's sale in the partition suit, now own the leased property subject to the plaintiff's rights as lessee under the lease.

3. The plaintiff is entitled to recover its costs herein expended.

Counsel for the plaintiff is directed to prepare an appropriate form of judgment in conformity with the court's findings of fact and conclusions of law, and to submit

a copy thereof to opposing counsel for approval as to form and, upon such approval, to the court for signature and entry. In the event of disagreement, the matter will be submitted to the court for settlement.