George G. GREEN et al., Appellants,

v.

**ASHER COAL MINING COMPANY,
Appellee.**

Court of Appeals of Kentucky.

March 20, 1964.

William A. Watson, Middlesboro, for appellants.

E. B. Wilson, Pineville, for appellee.

CLAY, Commissioner.

This controversy involves the liability of the owner of land leased for strip mining purposes to a lower riparian owner allegedly damaged by debris produced in the strip mining operation. The trial court dismissed appellant plaintiffs' complaint on the ground it failed to state a claim.

The complaint alleges in substance the following facts. Appellee defendant is engaged in the business of purchasing, leasing and developing lands for the purpose of carrying on mining operations. It leased some of its land to be mined for coal and the lessee adopted the method of strip mining. Defendant "was fully cognizant and aware of the nature of the mining operation thus to be conducted". The mining operation resulted in the displacement of top soil, rock, shale and other types of strata. After the cessation of the strip mining operation the defendant did not restore the land to prevent soil erosion or excessive drainage along natural water courses. As a result of the condition created, following a heavy rainfall vast quantities of loose rock, dirt and coal were washed down the mountainside, obstructing natural water courses, causing the flooding of plaintiffs' premises, and depositing debris thereon, thereby injuring plaintiffs' land.

It is alleged defendant failed to exercise ordinary care in the use of its property and was guilty of wanton, reckless and wilful conduct. Punitive as well as compensatory damages were demanded.

The complaint (which we commend as a model pleading) very thoroughly states a basic cause of action. The important, difficult and narrow question is whether it states a claim against the defendant landowner. It is the position of the defendant that the wrongful acts complained of were committed by its lessee and it is not liable therefor. It cannot be disputed that as a general rule the landlord is not liable for the negligent acts of his tenant. 32 Am. Jur., Landlord and Tenant, sections 161,

817; Farmer v. Modern Motors Co., 235 Ky. 483, 31 S.W.2d 716; Pinnell v. Woods, 275 Ky. 290, 121 S.W.2d 679; Cole v. Back, 305 Ky. 668, 205 S.W.2d 303.

■ As with all general rules there are exceptions. They stem from other general rules. Every owner must use his own property with due regard to the rights of other owners. Crabtree Coal Min. Co. v. Hamby's Adm'r, 28 Ky.Law Rep. 687, 90 S.W. 226. If a landowner uses his property in a negligent or unskillful manner or creates conditions thereon which are unusual, unreasonable or unnatural, thereby causing damage to adjoining landowners, he may be held liable. Chesapeake & O. R. Co. v. Weddington, 231 Ky. 745, 22 S.W.2d 131. The landowner may be liable for acts which cause flooding of his neighbor's land. Chesapeake & O. R. Co. v. Saulsberry, 262 Ky. 31, 88 S.W.2d 949. The landowner may be liable to lower riparian owners if he places deleterious substances on his land which ordinarily would carry to other lands. Nebo Consol. Coal & Coking Co. v. Lynch, 141 Ky. 711, 133 S.W. 763.

The exceptions to the rule of immunity arise in those cases where the condition or use of the premises is so potentially harmful that the courts will not permit the owner to hide behind a lease. For example, we have the "sidewalk" cases. In Mitchell's Adm'r v. Brady, 124 Ky. 411, 99 S.W. 266, 13 L.R.A.,N.S., 751, a pipe attached to a rented building fell upon a pedestrian. Even though the lessee was obligated under the lease to keep the building in repair and not to permit it to become unsafe, this Court held the lessor liable and stated (page 267 of 99 S.W.) :

"The owner of a building erected over the sidewalk is not absolved from liability to a person injured by the fall of a part of the building on the sidewalk, by reason of the fact that he has leased the property to another and the tenant has obligated himself to keep the property in repair. Both the tenant and the owner in such a state of case

are responsible. It is encumbent upon the owner to keep his premises safe, and he cannot relieve himself of this liability by contract with his tenant."

To the same effect was Goldberg v. Wunderlich, 248 Ky. 798, 59 S.W.2d 1018 (involving a defect in a cellar door which developed after the tenancy began). These cases disclose a policy followed under certain circumstances when the nature of the injury is such as to be directly traceable to a potentially dangerous condition which the lessor should anticipate and guard against, even though he does not have actual control of the premises.

Another exception has been recognized where land is leased for a purpose involving the admission of the general public. Examples are amusement parks, theatres, beaches, motels and baseball grandstands. See Prosser on Torts, 2d Ed., section 80 (page 469). Prosser comments that this rule is an arbitrary one. simply recognizing a greater responsibility of the lessor when the use involves a danger to the public. As before suggested, the matter is one of policy in the light of unusual conditions.

■ Another exception is where the lessee creates and maintains a nuisance on the premises. As said in Harper and James, The Law of Torts, Vol. 2, section 27.20 (page 1527) :

"Liability of the landlord for the activities of the tenant may however be based on an express authorization of the very conduct or condition that is the source of injury, or on the unreasonably great likelihood, at the time of the letting, that the tenant will create such a nuisance. Such a likelihood will be found where injury results from the normal, expectable use by the tenant of the leased premises and appliances in the condition they were in at the time of the letting."

■ The use of the word "nuisance" in this connection is simply a convenient

method of describing a condition which causes injury to another. See definition of "nuisance" in Words and Phrases, Permanent Edition, Vol. 28A. In many cases we have examined, the imposition of liability upon the lessor rests upon the peculiar *nature* of the condition. If potential harm is sufficiently substantial and predictable, it is the duty of the lessor to abate the nuisance created by his lessee. See Swift & Co. v. Peoples Coal & Oil Co., 121 Conn. 579, 186 A. 629.

Blasting cases furnish another example. In Board of Chosen Freeholders of Hudson County v. Woodcliffe Land Imp. Co., 74 N.J.L. 355, 65 A. 844, the defendant had leased his land for the purpose of removing earth and rock and by reason of excavation and blasting the adjoining property owner was injured. The court said (page 846 of 65 A.):

"We can see no distinction in principle between the liability of the lessor who demises premises with an already existing nuisance, and the liability of a lessor who demises premises for a purpose the necessary result of which is a nuisance, and the case is much stronger against a lessor who demises premises for the very purpose of creating a nuisance either by authorizing it or by making the act of the tenant his own. It would be manifestly wrong to allow the lessor to escape liability merely by demising the premises in order that the nuisance might be the original act of the lessee only."

Similar decisions were reached in Benton v. Kernan, 127 N.J.Eq. 434, 13 A.2d 825, and Fagan v. Silver, 57 Mont. 427, 188 P. 900. Apparently to the contrary is Tennessee Coal Iron & R. Co. v. Hartline, 244 Ala. 116, 11 So.2d 833.

The theory that the lessor is liable when his property is leased for a use which involves the likelihood of harm to others is the same as that applied when a landowner claims immunity because of a wrong committed on his property by an *independent contractor*. With respect to the owner-independent contractor relationship, it is stated by Prosser:[1]

"But liability has been extended beyond this, to work which, in its nature, will create a risk of harm to others unless some particular precautions are taken—as, for example, excavations in or near a public highway, or construction or repair work on buildings adjoining it and similar activities likely to endanger passers-by; the clearing of land by fire, the spraying of poison, tearing down high walls or chimneys, the construction of a dam, and many other kinds of work. So far as the cases indicate, the principle seems to be limited to work in which there is a high degree of risk in relation to the particular surroundings, or some rather specific danger to those in the vicinity, recognizable in advance as calling for definite precautions."

In a blasting case heretofore cited,[2] the court considered the question of whether the party creating the condition which caused the injury was a lessee or an independent contractor, but decided the landowner was liable in either event.

The authorities heretofore discussed recognize that the owner of land may be held liable for the acts of his lessee under the following conditions: the particular use or exploitation of the land must be such that harm to others is likely to ensue unless precautions are taken; the owner must consent to, authorize or be cognizant of this use; and the injury must be such as can reasonably be anticipated from such use.

The case most similar to the one before us is Campbell v. Louisville Coal Mining Co., 39 Colo. 379, 89 P. 767, 10 L.R.A.,N.S., 822.

1. Prosser on Torts, 2d Ed., section 64 (page 360).

2. Fagan v. Silver, 57 Mont. 427, 188 P. 900.

In that case the plaintiff owned the surface of a tract of land and the defendant owned a coal vein under it. The defendant leased the coal vein (in return for a royalty) and the lessee negligently mined all of the coal, leaving no support for the surface, which subsided. The court reversed a directed verdict for the defendant lessor and adjudged him liable for the damages. In the opinion the court stated (pages 768–769 of 89 P.):

"It has been held that whoever, for his own advantage, authorizes his property to be used by another in such manner as to unnecessarily endanger and injure the property of others is answerable for the consequences. Such liability has been based upon the law of nuisance, but it follows when predicated upon negligence the same as when grounded upon an intentional wrong."

\*   \*   \*   \*   \*   \*

"The failure of its lessee to leave or provide these supports was negligence, which the defendant sanctioned or consented to, or took no steps to prevent, and of which it has had the benefit, and hence its liability is the same as though it had committed the negligent acts which resulted in the damage to plaintiffs."

\*   \*   \*   \*   \*   \*

"It could vest no greater right in its lessee than it could itself exercise, and when it did lease the right to remove the coal it was bound to exercise at least a reasonable degree of care to prevent its lessee from so mining as to injure the property of plaintiffs."

■ In a sense the leasing of land for exploitation is a method of use of it by the owner. He may not utilize it so as to cause injury to others. Therefore, if the expected operations under the lease result in such injury as may be reasonably anticipated, the owner has been a party to the wrong and cannot disclaim liability because he did not personally create the condition or commit the wrongful act. The significant considerations are the cognizable potentialities of danger and the reasonable predictability of injury.

Applying the law to the facts stated in the complaint, we find a sustainable legal theory of liability. The defendant was in the mining business. The leasing of this land was for the purpose of carrying out mining operations through a third party. Strip mining by the lessee was authorized. The topography of the land involved was such that debris from this operation would likely be cast or eroded into mountain streams, as a result of which damage to lower riparian owners could be reasonably anticipated.

Here we have a potentially harmful activity, conducted on the owner's land for his profit. The only difference between this case and the blasting cases is that the potentiality of harm is more immediate in the latter. That substantial time lapses between the initial activity on the land and the resulting injury to others does not affect the question of liability.

■ We are of the opinion the plaintiffs state a claim against the defendant for injury arising out of the acts of its lessee. The question is not before us as to whether this is a primary or secondary liability, or whether the defendant is entitled to indemnity from its lessee.

There is an additional legal theory under which the defendant would be liable to the plaintiffs. The complaint alleges that after the "cessation of operations" the defendant maintained the conditions which eventually caused plaintiffs damage. It is not stated that the lease had expired. However, under the allegations of the complaint, the plaintiffs could prove that the defendant had assumed or had the right to assume actual control of its land. In such an event the defendant would be in the position of a landowner continuing to maintain a nuisance created by his lessee and of course this could be a wrong committed directly by the owner. See Swift & Co. v. Peoples Coal & Oil Co., 121 Conn. 579, 186 A. 629.

■ We are limiting our decision to the particular facts alleged in plaintiffs' complaint. We are not deciding that a landowner is necessarily liable for the acts of the lessee who engages in strip mining. However, we cannot close our eyes to the fact that an operation of this nature is obviously disruptive and destructive of substantial surface areas. While the landowner may consent to having his own land practically destroyed, he may not knowingly expose neighboring lands to injury likely to ensue therefrom and claim immunity from wrongdoing by virtue of a lease. He must act with reasonable prudence, and proof relating to the nature of the operation, the topography of the land, and the likelihood of injury may support a finding of liability. We are of the opinion the complaint states a claim upon which relief could be granted against the defendant.

The judgment is reversed for proceedings consistent with this opinion.

MONTGOMERY, J., dissenting.