Alexander "Robert" EASSON and
Julia C. Easson, Plaintiffs
and Appellants,

v.

William L. WAGNER, Individually and
d/b/a Wagner Mining, Defendant,

and

Myron D. Eggers and Joan C. Eggers,
Defendants and Appellees.

No. 17920.

Supreme Court of South Dakota.

Argued Nov. 18, 1992.

Decided June 2, 1993.

Scott D. McGregor of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for plaintiffs and appellants.

Todd D. Hauge of Bakewell, Hauge & Vander Heide, Custer, for defendants and appellees.

AMUNDSON, Justice.

Alexander and Julia Easson (Eassons) appeal from an order granting summary judgment to Myron D. and Joan C. Eggers (Eggers). We reverse and remand.

## FACTS

In December 1987, Eassons moved to Custer, South Dakota, from Massachusetts. They subsequently purchased a homesite, Lot 10, in the residential subdivision of Woodford Estates in January, 1988. Eassons' lot is situated next to an old mine property known as Eggers' Mine or Ballard Claim (Ballard Claim).

Ballard Claim has been mined since 1941. Eassons have known of the mine's existence since 1979, as they periodically visited relatives in the Custer area prior to moving there. At the time Eassons purchased their lot, Eggers owned Ballard Claim and permitted it to be mined by William L. Wagner (Wagner) on behalf of his father, Lee Wagner, and North American Accounts. In August 1988, Wagner himself leased Ballard Claim from Myron Eggers (Myron). Wagner subsequently purchased Ballard Claim from Eggers in March, 1989, under a contract for deed. He has since quit-claimed Ballard Claim back to Eggers as he was unable to meet the mortgage payments.

Eassons began construction of their home on Lot 10 in February 1988. There was little mining activity taking place on Ballard Claim at that time. In June 1988, Eassons began the interior work on their home. At the same time, the scope of the mining activity on Ballard Claim began to increase. In July 1988, blasting took place on Ballard Claim. One blast during this time showered rocks onto Eassons' property. Eassons expressed concern to Wagner about the blasting and its close proximity to their property on several occasions.

On February 13, 1989,[1] Wagner set off a blast which sent numerous rocks through Eassons' windows and roof. Alexander Easson's lip was cut by a piece of broken glass coming from a window. In addition, the blast littered Eassons' yard with rocks and caused the foundation of their home to crack.

As a result of the blast, Eassons filed a complaint in circuit court against Wagner and Eggers. The complaint alleged that Eggers were liable for negligent leasing in that they failed to insure that Wagner would protect Eassons' adjoining property from damage as a result of Wagner's mining. The complaint further alleged that Eggers were liable for negligent leasing, in that they failed to insure that the purpose for which they leased their property was a safe and proper one. The claims against Wagner are not at issue in this appeal.

Eggers moved for summary judgment, asserting that they were not negligent in leasing their mine property to Wagner; Joan Eggers should be dismissed as an improper party; and negligent leasing is not a recognizable tort in South Dakota. Eassons cross-moved for summary judgment. The trial court granted summary judgment to Eggers, dismissing Joan Eggers as a defendant and also dismissing Eassons' negligent leasing claim against the Eggers and denied Eassons' cross-motion for summary judgment. Eassons appeal.

1. As of February 13, 1989, Wagner did not have a valid mining permit from the state of South Dakota authorizing him to engage in mining activity on Ballard Claim. On March 27, 1989, the South Dakota Department of Water and Natural Resources issued a compliance order requiring Wagner to submit a blasting plan and meet certain conditions. Wagner subsequently brought himself into compliance with state mining laws and regulations.

## ISSUES

1. Whether the trial court erred in granting Eggers summary judgment on Eassons' claim for negligent leasing?

2. Whether the trial court erred in granting Eggers' motion to dismiss Joan C. Eggers as a party defendant?

## ANALYSIS

Our standard of review for the grant or denial of a summary judgment is well established.

In reviewing a grant or denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991) (citing *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 836–37 (S.D.1990)). With these standards in mind, we review the trial court's granting of summary judgment thereby dismissing Eassons' negligent leasing claim and dismissing Joan C. Eggers as a defendant.

### 1. Negligent Leasing

■ We note initially that summary judgment is generally not appropriate in negligence actions. *Zeeb v. Handel*, 401 N.W.2d 536, 537 (S.D.1987). Issues of negligence are questions of fact for the jury and should be normally resolved by trial. *Id.* This action is based in negligence. We begin by examining the cause of action, negligent leasing, itself.

■ It is a well-recognized principle that an owner of property must use his property with due regard to the rights of other owners. *State v. Dvorak*, 261 N.W.2d 486, 489 (Iowa 1978); *Green v. Asher Coal Mining Co.*, 377 S.W.2d 68, 70 (Ky.1964); *Bennett v. Larsen Co.*, 118 Wis.2d 681, 348 N.W.2d 540, 547 (1984). If a landowner uses his property in a negligent manner or creates conditions thereon which are unusual or unreasonable, causing damage to adjoining landowners, he may be held liable. *Asher Coal*, 377 S.W.2d at 70.

■ In the case before us, it was the alleged negligent use of the property by a tenant, Wagner, that caused the damage to the adjoining property. As a general rule, a landlord is not liable for the negligent acts of his tenant. *Clauson v. Kempffer*, 477 N.W.2d 257, 259 (S.D.1991); *Asher Coal*, 377 S.W.2d at 69; 49 Am.Jur.2d *Landlord and Tenant* § 780 (1970). However, there are exceptions to the general rule. These exceptions arise in those cases where the condition or use of the premises is so potentially harmful that the courts will not permit the owner to hide behind a lease. *Asher Coal*, 377 S.W.2d at 70.

■ The Restatement (Second) of Property clearly sets forth when a landlord is subject to liability for the acts of his tenant.

A landlord is subject to liability for physical harm to persons outside the leased property caused by activities of the tenant or others on the leased property after the landlord transfers possession only if:

(1) the landlord at the time of the lease consented to the activity or knew that it would be carried on; and

(2) the landlord knew or had reason to know that it would unavoidably involve an unreasonable risk, or that special precautions necessary to safety would not be taken.

Restatement (Second) of Property § 18.4 (1977). *See also,* Restatement (Second) of

Torts § 379A (1965).[2] Thus the claim of negligent leasing gives rise to two questions of fact: whether the landlord knew of, or consented to, the tenant's activity which caused the harm and whether he realized the risks associated with that activity. *Id.* If the expected operations under the lease result in a reasonably anticipated injury, the landlord cannot disclaim liability. *Asher Coal,* 377 S.W.2d at 72.

■ First, Eggers must have knowledge that mining would be carried out on Ballard Claim. Eggers cannot, and do not, deny knowing that Wagner was mining on Ballard Claim. Ballard Claim has been mined since 1941. Furthermore, the lease agreement between Eggers and Wagner provided for royalty payments to Eggers based on the amount of material mined on Ballard Claim. A landlord may be held liable for damage to adjoining property occasioned by a tenant's use of the property that was sanctioned by the landlord. *Moore v. City of Pontiac,* 143 Mich.App. 610, 372 N.W.2d 627, 629 (1985).

■ Second, Eggers must have knowledge that mining would unavoidably involve an unreasonable risk. As a term of the lease, Eggers required that Wagner carry public liability and property damage insurance. Eggers' lease also required that Wagner would indemnify Eggers against all liability for damages resulting from injury or destruction of any property or land arising out of the performance of the work covered by the lease. Certainly, mandating insurance coverage and indemnification evinces a recognition by Eggers that mining the Ballard Claim carried with it risks from which liability could result to them as the landowners. The extent of Eggers' appreciation of the risks associated with mining under § 18.4(2), however, raises a question of fact a jury must decide.

The negligent leasing claim was thus inappropriate for summary judgment and the trial court's order is reversed.

**2.** Although not applicable to the facts of that case, this court in *Clauson* acknowledged the exceptions to the general rule of lessor non-

*2. Dismissal of Joan C. Eggers as a Defendant*

The record reflects the trial court granted summary judgment and a motion to dismiss Joan C. Eggers (Joan) as a party defendant. However, there is no written motion to dismiss in the settled record setting forth the grounds for such a motion nor are we cited any authority for the appropriateness of the same. Likewise, Eggers' answer and counterclaim make no mention of dismissing Joan as a party defendant. Therefore, we will treat Joan's motion to dismiss as being included in her motion for summary judgment. Again, the record is devoid of any filings submitted by Joan in support of her motion which prove the absence of any genuine issue of fact. *Waddell,* 471 N.W.2d at 593.

Joan and her husband, Myron, jointly owned Ballard Claim. However, only Myron signed the agreement leasing Ballard Claim to Wagner. "Ordinarily, in this country, no ground is recognized for distinguishing between joint tenancies and tenancies in common insofar as concerns the effects of a lease given by one, or some less than all, of the co-owners." Annotation, *Effect of Lease Given by Part Only of Cotenants,* 49 A.L.R.2d 797, 799–800 (1956). Authority addressing the lease of property by only one joint tenant is extremely limited. *Booth v. Cebula,* 25 Ill. App.2d 411, 166 N.E.2d 618 (1960). However, the courts have addressed the leasing, by one owner, of property commonly held when the owners are tenants in common. *Jewel Tea Co. v. Eagle Realty Co.,* 70 F.Supp. 918 (D.Neb.1947); *Dethlefs v. Carrier,* 245 Iowa 786, 64 N.W.2d 272 (1954).

■ A lease of the entire estate by one tenant in common is ordinarily not binding on the other tenants in common who have not authorized or ratified it. *Jewel Tea,* 70 F.Supp. at 924–25; *Dethlefs,* 64 N.W.2d at 274. However, in the absence of any evidence to the contrary, it will be presumed that the act of leasing the property by one

liability as set forth in Restatement (Second) of Torts § 379A. *Clauson,* 477 N.W.2d at 260 fn. 5.

tenant in common was performed with the knowledge and consent of the other tenants. *Id.* Likewise, "[i]f one of two joint tenants executes a lease without the participation of the other, it will be deemed to be for the benefit of both." *Booth,* 166 N.E.2d at 621 (quoting *Reiger v. Bruce,* 322 Ill.App. 689, 54 N.E.2d 770 (1944)). "Acceptance by the remaining co-tenants of benefits or rents under a lease executed by one co-tenant constitutes ratification of the lease." *Jewel Tea,* 70 F.Supp. at 925.

█ Whether Joan knew of the lease to Wagner is a question of fact. Likewise, it is a question of fact whether she received any rent or benefit from the lease to Wagner. *See Fairway Markets, Inc. v. Sharp,* 252 So.2d 814, 815 (Fla.Dist.Ct.App.1971) (questions of genuine material fact as to whether joint tenant had authority to act on behalf of other joint tenants in executing lease agreement and whether joint tenants subsequently ratified agreement). These questions of fact should be resolved by a jury and are inappropriate for summary judgment. *Id.; Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). We therefore conclude that Joan was either improperly granted summary judgment or dismissal as a party to the lawsuit and accordingly reverse and remand for a trial on the merits.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., deeming himself disqualified, did not participate.